JAMES K. MURPHY, PLAINTIFF AND APPELLEE, v. NELLIE
·  LEWIS, DEFENDANT AND APPELLANT.

Argued November 8, 1907—Decided February 24, 1908.

One of two tenants by entireties is not the "owner" of lands for the
purpose of making a contract with a broker for commissions for
the sale of such lands without the consent of the other tenant
within the meaning of section 10 of "An act for the prevention
of frauds and perjuries." *Gen. Stat., p.* 1604.

On appeal from the First District Court of Jersey City.

Before Justices SWAYZE and TRENCHARD.

For the appellant, *Samuel A. Besson.*

For the appellee, *George T. Vickers.*

The opinion of the court was delivered by

TRENCHARD, J.   This is an appeal from a judgment against
the defendant, Nellie Lewis, in the First District Court of
Jersey City.

George and Nellie Lewis were seized of an estate by the
entirety in a house and lot in Jersey City.

On March 2d, 1906, Nellie Lewis signed an agreement with
James K. Murphy, the plaintiff, a real estate agent, by which
he was to secure a purchaser for the property ready, willing
and able to pay $5,000 or more for it, and in return for this
service he was to receive a commission of two and one-half
per cent. on the purchase price.

The agreement was signed by Nellie Lewis, who also affixed
the name of her husband, George Lewis, thereto, without his
knowledge or consent.   The latter remained in ignorance of
the agreement until June 12th, 1907, when Murphy produced  ·
a purchaser.   Upon thus learning of the existence of the
agreement the husband refused to ratify the agreement or to

comply with its terms, whereupon Murphy brought this suit against both husband and wife to recover commissions.

The defendants set up as their defence the statute of frauds, alleging that Murphy did not have a written contract from the "owner," as required by that statute. The learned trial judge ruled that as to the husband the statute operated as a bar, but gave judgment against the wife. It is from this judgment that this appeal is taken.

Section 10 of "An act for the prevention of frauds and perjuries" (*Gen. Stat., p.* 1604) provides "that no broker or real estate agent, selling or exchanging land for or on account of the owner, shall be entitled to any commission for the sale or exchange of any real estate unless the authority for selling or exchanging such land is in writing and signed by the owner or his authorized agent."

The word "owner" is one of broad and general significa-tion, and therefore possessed of varied shades of meaning. In order to determine its exact force in this statute we must look at the circumstances under which it was used.

An examination of the other sections of the statute will show that there is a significance in the use of the word "owner." The first section uses the language "signed by the parties so making or creating the same." The second section speaks of the "party so assigning," &c. The fifth section, relative to contracts for the sale of lands, provides that such contracts "shall be in writing and signed by the party to be charged therewith," &c. The sixth section, relative to the sale of goods, speaks also "of the party to be charged thereby," while the section under consideration uses the word "owner."

It is manifest that the reason for the formation of the con-tractual relation to which the tenth section of the statute was intended to apply is to sell lands, or more easily sell them, and to provide for the agents' commissions. With this fact in view it becomes apparent that the word "owner" was not intended to include within its scope persons who had no interest in the real estate mentioned in the contract which they could convey.

We think, therefore, that the word "owner," as used in section 10, was intended to apply only to that person, or to those persons, taken collectively, who had some distinct separable interest in the real estate mentioned, which that person or those persons taken collectively were capable of conveying.

Giving the word "owner" that signification, we perceive that Nellie Lewis, the wife, was not the owner of the real estate. We have pointed out that the husband and wife were seized of an estate by the entirety, an estate peculiar to the marital relation, and based on the theory that the husband and wife are but one person in law. Its essential features by the common law were that both were seized of the entirety, and neither could convey without the consent of the other, and the survivor took the whole. These common-law rules were in force in this state until July 4th, 1852, when the Married Woman's act of that year went into effect. The effect of the act of 1852, as regards estates by the entirety, was to endow the wife with the capacity, during the joint lives of the husband and wife, to hold in her possession, as if a single female, one-half of the estate in common with her husband, coupled with the right of survivorship subsisting at common law. It did not create such an estate a tenancy in common. *Buttlar* v. *Rosenblath,* 15 *Stew. Eq.* 651. By reason of the peculiar estate which the wife held in the lands she could not alone convey the same, or any interest therein, and was therefore not the owner within the meaning of the statute.

The contract having been signed by the wife alone, and she not being the agent of her husband in that regard, the requirement of the statute that it be "signed by the owner or his authorized agent" was not complied with.

The result is that the judgment below must be reversed, and a *venire de novo* awarded.