GEORGE MAIER AND WLADYSLAW PRUSKO, PROSECU-
TORS, v. HONORABLE EDWIN C. CAFFREY, JUDGE OF
THE BERGEN COUNTY CIRCUIT COURT; THE BOR-
OUGH OF NORTH ARLINGTON, IN THE COUNTY OF
BERGEN, ET AL., DEFENDANTS.

Submitted October term, 1932—Decided April 21, 1933.

Before Justices PARKER, LLOYD and HEHER.

For the prosecutors, *Robert W. Wolfe.*

For the defendants, *Breslin & Breslin.*

PER CURIAM.

The prosecutors attack by *certiorari* two orders made by
Judge Caffrey of the Circuit Court on the appeal provided
by the Home Rule act, article 20, section 42, as amended by
*Pamph. L.* 1925, *p.* 237, reviewing assessments on a large
number of building lots.

The facts of the case resemble those in *Kearny* v. *Cleary,*
6 *N. J. Mis. R.* 442; 141 *Atl. Rep.* 666. In this case, as in
that, a speculative land company in the inflation period of
1928 and 1929 bought a worn-out farm, made a map subdivid-
ing it into blocks and lots where nothing of the sort existed on
the ground, and immediately thereafter the municipal body
proceeded to adopt ordinances looking to various improvements
on the "Morningside Park" tract. The company took title in
February, 1929; an ordinance for the laying of concrete

sidewalks on the property was adopted February 26th; another, for curbing certain streets, March 4th; a third for the laying of concrete street pavement with curb and house connections, March 5th; a fourth and a fifth to construct storm water drains, April 2d. Contracts for some or all of these improvements were made with a corporation called Nesto Construction Company. They do not include a contract for a sewer system; that was made by the land company itself and is one of those considered in *Holden* v. *North Arlington,* 10 *N. J. Mis. R.* 1294; 163 *Atl. Rep.* 447. These ordinances and contracts exhibit a fairly complete scheme for the creation of a real estate speculation at the expense primarily of the borough to the extent of the work covered by the ordinances, and to underwrite the expense, the borough borrowed the needed money on its bonds sold in the market. The result of the improvements was intended to, and presumably did, transform an old farm into a realty development marketable in building lots instead of acreage. But before final fruition the crash of 1929 came, leaving the property subject to assessment for benefits, as of the date of the improvement. *New Jersey Railroad Co.* v. *Elizabeth,* 37 *N. J. L.* 330, 334. See 44 *C. J.* 583.

The prosecutor Prusko appears to own nine lots in all, constituting the northerly half of block 105-0, fronting on the south side of Canterbury avenue between First street on the west and Madison street on the east.

The prosecutor Maier stated in his petitions for writs of *certiorari* that he was the "owner" of numbered lots in some eighteen different blocks on the tract (in most cases the entire block). But so far as we discover in the voluminous printed case, there is no evidence of his ownership; and while the notices of appeal by Prusko relating to his nine lots are printed, there is no notice of an appeal as regards the lots of which Maier says in his petition he is the "owner" there being a general statement at the head of page 64 of the case that "notices of appeal were filed and served in the form hereinafter set forth (*i. e.,* the Prusko appeals), affecting all lots referred to," &c. The appellant is not named: and it is

significant that on January 22d, 1932, a month before allowance of the writs, a consent order was entered, confirming all assessments "in so far as the right, title and interest of the Morningside Park corporation (is) involved in any of the tracts mentioned in the appeals." At a motion before Judge Caffrey on November 20th, 1931, it was stated that the stock ownership in Morningside company had passed to new parties, who wished the assessment confirmed. The present attorney of record for the prosecutors then stated that "one of the appellants is the blanket mortgagee." The court: "What standing has he?" Mr. Wimmer: "He is an appellant."

The Morningside corporation is consequently out of the case. For the respondents it is urged that Maier (assuming that he actually appealed) is only a mortgagee and as such has no status to attack the assessment. We think the point is well taken. The language of section 42, *supra,* relating to appeals, is: "Any owner of any property assessed for benefits * * * may, within thirty days after confirmation of such assessment, * * * appeal from the same," &c. Conceding the elasticity of meaning that may be attached to the word "owners" (see *Murphy* v. *Lewis,* 76 *N. J. L.* 141, 142; 69 *Atl. Rep.* 483), our decisions indicate clearly that in a case like that before us the statute is not intended to include a mortgagee claiming a lien on the land. *Wade* v. *Miller,* 32 *N. J. L.* 296; *Shields* v. *Lozear,* 34 *Id.* 496, 503; *Kirscher* v. *Schalk,* 39 *Id.* 335; *Crane* v. *Elizabeth,* 36 *N. J. Eq.* 339 (especially at *pp.* 341, 342). That the holder of an equity of redemption, even tenuous in character, is an "owner" for tax exemption purposes, is held in *Princeton* v. *State Board,* 96 *N. J. L.* 334 (at *p.* 338); 115 *Atl. Rep.* 342. We agree that the prosecutor Maier has no standing, and as to him the writs will be dismissed.

As to the prosecutor Prusko, the review asked by him refers to lots numbered 1 to 9 inclusive in block 109-0. As to these, the case exhibits a substantial reduction in the assessments, both as recommended by the commissioner and as effected in the two orders signed by Judge Cleary. We do not perceive in the brief, and have not found in the case any good reason

why the assessments on those lots should be further reduced, or that there was error in the application of the front foot rule, either as regards corner lots or inside lots. As to Prusko, therefore, the orders under review will be affirmed.