MAYOR AND COMMON COUNCIL OF THE BOROUGH OF
PRINCETON, PROSECUTOR, v. THE STATE BOARD OF
TAXES AND ASSESSMENTS ET AL., RESPONDENTS.

Submitted July 7, 1921—Decided November 16, 1921.

1. An educational institution organized under "An act to incorporate associations not for pecuniary profit" (*Pamph. L.* 1898, *p.* 422; *Comp. Stat., p.* 125) which in good faith purchased property for the sum of $50,000 that is later valued by the taxing authorities for taxation purposes at $69,150, "owns the property" within the meaning of section 203, subdivision 4 of the Tax act (Revision of 1918, *Pamph. L., p.* 849), even though the entire purchase price was secured by the assumption of a first mortgage for $25,000 and the creation of a second mortgage for $25,000.

2. The question being whether a school is "conducted for profit" (so as to defeat exemption) within the meaning of section 203, subdivision 4 of the Tax act (Revision of 1918, *Pamph. L., p.* 849), the test is not whether there is or may be a profit, but whether the school is conducted for the purpose of making a profit; that is to say, whether the charges for tuition and board are fixed with the intention of yielding a profit over and above the actual cost. In the case of a day school, unless the tuition charges are so fixed as to evince a purpose to make a profit over and above the cost of tuition, the school is exempt.

3. An educational corporation organized under "An act to incorporate associations not for pecuniary profit" is not "conducted for profit" within the meaning of section 203, subdivision 4 of the Tax act (Revision of 1918, *Pamph. L., p.* 849), merely because it secured the entire purchase price of the school property by a purchase-money mortgage to the former owner, even though the property was not a "money maker" in the hands of the former owner, the sale and purchase having been made in good faith.

4. An educational institution organized under "An act to incorporate associations not for pecuniary profit" is not "conducted for profit" within the meaning of section 203, subdivision 4 of the Tax act (Revision of 1918, *Pamph. L., p.* 849), merely because its principal and teachers are paid moderate salaries.

5. A three-story school building, owned by an educational institution, is "actually used" for school purposes, and for "no other purpose" within the meaning of section 203, subdivision 4 of the Tax act (Revision of 1918, *Pamph. L., p.* 849), it appearing that all of the rooms on the first floor, twenty-six of the twenty-nine rooms on the second floor, and nine of the nineteen rooms on the third floor, were in actual use by the school, and that all were required for use in the near future; and the mere fact that

some of the rooms were used as dormitories by teachers and care-
takers of the school, who paid rent which was applied to the
salaries of the teachers, does not deprive the school of its ex-
emption under the act.

On *certiorari.*

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *Richard Stockton 3d,* and *Frederick
W. Gnichtel.*

For the respondents, *William C. Vandewater* and *Kenneth
H. Lanning.*

The opinion of the court was delivered by

TRENCHARD, J. This writ of *certiorari* brings up for re-
view a judgment of the state board of taxes and assessments
canceling an assessment for taxes.

It appears that the "Trustees of Miss Fine's School," a
corporation organized under "An act to incorporate associa-
tions not for pecuniary profit" (*Pamph. L.* 1898, *p.* 422;
*Comp. Stat., p.* 125), is the owner of certain contiguous tracts
of land in the borough of Princeton, commonly known as the
"Princeton Inn" property. These tracts were assessed for
the year 1920 by the assessor of the borough as follows: (1)
land on Boudinot street, $750; (2) land on Boudinot street,
$5,000; (3) land on Boudinot street, $7,750; (4) land on
Stockton street ($15,400) and buildings ($48,000), $63,400.

The trustees, maintaining that this property was exempt
from taxation under section 203, subdivision 4 of the Tax act
(Revision of 1918, *Pamph. L., p.* 849), appealed to the Mer-
cer county board of taxation and the assessments were in each
case affirmed. Appeals were then taken to the state board of
taxes and assessments, and that board ordered the cancella-
tion of the assessment on "lands on Stockton street, $15,400;
buildings, $48,000," and "lands on Boudinot street, $750."
As to the other two tracts the assessments were affirmed, for
the reason that these lots were not necessary for the fair en-

joyment of the school buildings. Thereupon this writ was sued out by the borough to review the action of the state board.

We are of the opinion that the judgment of the state board is right.

In order to fully understand the situation a short history of the property is necessary. For about twenty years a day school has been conducted in Princeton by Miss May Margaret Fine, who is, at the present time, the principal of the school in question. This school growing in size and usefulness, a number of residents of Princeton, whose children were attending the school, or who were interested in it because their friends' children were attending it, organized for the purpose of raising a fund to carry on in a larger way the work of the old school. Accordingly, on March 9th, 1917, an agreement in writing was made between May Margaret Fine, party of the first part, and John Grier Hibben, Ralph B. Pomeroy, Eleanor C. Marquand, Louis E. Laflin and Isaac C. Wheaton, parties of the second part, by which the parties of the second part associated themselves together (as recited in the preamble) "to raise a fund for the purchase of property, the acquisition or the erection of a school building and the endowment of the school now being conducted at Princeton, New Jersey, by the party of the first part, to the end that the town of Princeton shall be provided with a permanent school affording the advantages offered by private schools in large cities."

Paragraph sixth authorized the trustees to incorporate and to transfer to the corporation all property held in their hands as trustees.

Paragraph eighth specifically stated: "The trust herein defined is not created for profit, but all funds at any time coming into the hands of the trustees shall be used and applied solely for the benefit of said school."

As a result of this agreement the sum of $8.000 was raised by voluntary contribution and a piece of land on Boudinot street purchased by the trustees. Because of the war the

erection of a school building was delayed, but later an opportunity was presented for the purchase of the property now in question, known as the Princeton Inn, at a most advantageous figure. Accordingly, on March 29th, 1919, a corporation not for pecuniary profit was formed and that property was purchased. This property, which is assessed by the borough at $69,150, was purchased for the sum of $50,000, and the entire purchase price was secured by the assumption of a first mortgage for $25,000 at six per cent., and the creation of a second mortgage for $25,000 at five per cent.

The board of trustees of the corporation thus formed consisted of "Rev. Charles R. Erdman, President John Grier Hibben, Miss May Margaret Fine, Mr. Louis E. Laflin, Mrs. Allan Marquand, Mrs. Arco Pardee, Mr. George L. Shearer, Mr. Isaac S. Wheaton and Mr. Moses Taylor Pyne."

These trustees took over the entire management of the old school and appointed Miss May Margaret Fine the principal of the school at a salary of $3,000 a year. Miss Fine, without any money consideration whatsoever, transferred to the corporation the good-will of the school, and all the furniture and equipment which was then being used in the conduct of the school. The school had in the past become well known as Miss Fine's School, and, accordingly, the corporation was called the "Trustees of Miss Fine's School." The purpose of the corporation as set forth in its charter is "to perpetuate the day school founded in Princeton by Miss May Margaret Fine and to maintain in Princeton a day school for girls and boys under thirteen years of age, in order that families connected with educational institutions located there, and others located in the town of Princeton, may always be afforded facilities for the education of their children that may be worthy of Princeton."

Miss Fine herself has no pecuniary interest in the school whatsoever, except as to the salary paid to her for her services as principal.

We think that this property is exempt from taxation under section 203, subdivision 4 of the Tax act (Revision of 1918),

which exempts "all buildings actually used for colleges, schools, academies or seminaries; * * * the land whereon * * * the buildings * * * are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned, and to no other purpose, and does not exceed five acres in extent; * * * provided, however, * * * that said buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying the same as aforesaid are not conducted for profit; * * * provided, further, that the foregoing exemptions shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this state and authorized to carry out the purposes on account of which such exemption is claimed."

The borough contends that the corporation has only a "nominal ownership" and does not "own the property" within the meaning of the act.

But that is not so. The evidence shows that the corporation in good faith purchased the property for the sum of $50,000; that it is now valued by the taxing authorities for taxation purposes at $69,150, and we think it "owns the property" within the meaning of section 203, subdivision 4 of the Tax act (Revision of 1918), even though the entire purchase price was secured by the assumption of a first mortgage for $25,000 and the creation of a second mortgage for $25.000.

We think there is no merit in the contention of the borough that the school is "conducted for profit" within the meaning of the Tax act.

As we have seen, it was incorporated under "An act to incorporate associations not for pecuniary profit," and has no capital stock, and the trust agreement which resulted in transferring the school from individual to corporate control shows that no profit was contemplated.

The question being whether the school is "conducted for profit" (so as to defeat exemption), within the meaning of

the act, the test is not whether there is or may be a profit, but whether the school is conducted for the purpose of making a profit; that is to say, whether the charges for tuition and board are fixed with the intention of yielding a profit over and above the actual cost. *Institute of Holy Angels* v. *Bender*, 79 N. J. L. 34.

In the case of a day school (such as the one now in question), unless the tuition charges are so fixed as to evince a purpose to make a profit over and above the cost of tuition, the school is exempt.

In the present case the evidence shows conclusively that the charges are not fixed with the intention of yielding a profit. It shows that the school is supported in part by an endowment and gifts from friends, and that the charges for tuition are much lower than other schools of like character. It shows that in fact the school did not yield a profit, but was conducted at a loss.

Indeed, it is not contended that the corporation makes a profit. The first contention under this head seems to be that the corporation should be deemed to be "conducted for profit" because it secured the entire purchase price of the school property by a purchase-money mortgage to the former owner, who was thus "benefited," since the property was not a "money maker" in the hands of the former owner. But, obviously, since the sale and purchase of the property was in good faith, that contention is unsound.

It is next insisted that the school was "conducted for profit" within the meaning of the act because it "has been exceedingly profitable to Miss Fine and the other teachers."

But this contention seems to have no substantial foundation in fact.

Far from "profiting" in a pecuniary way from her connection with the school, Miss Fine is shown by the record to be one of its benefactors. Among its other gifts, it received from her as a pure gift the good-will and furniture and equipment of her old school. Her selection as principal of the new school is shown to have been a natural and fitting

one. True she has a stated salary of $3,000 a year, but upon one occasion she refused to take all of that. The salary is a modest one, considering her experience and attainments, and is much less than she has been offered for such services elsewhere. The other teachers are paid very modest salaries. Neither Miss Fine nor any of the teachers have any pecuniary interest in the school whatsoever, except as to their salaries. This differentiates the case from that of *Montclair* v. *State Board of Equalization of Taxes,* 86 *N. J. L.* 497, where the principal not only received an exorbitant salary, but really owned, and controlled the finances of, the school. Certainly, the school in the present case cannot be said to be "conducted for profit" merely by reason of the moderate salaries paid to the principal and teachers. *Institute of Holy Angels* v. *Bender, supra.*

Finally, it is contended that the school building is not "actually used" for school purposes within the meaning of the act.

We think it is. It is a three-story building. At the time of the assessment all of the rooms on the first floor, twenty-six of the twenty-nine rooms on the second floor, and nine of the nineteen rooms on the third floor were in actual use by the school. The plan and expectation was, and is, to use them all in the near future. The mere fact that some of these rooms were occupied as dormitories by teachers and caretakers of the school, who paid rent, which was applied to the salaries of teachers, does not deprive the school of its exemption under the act.

The judgment under review will be affirmed, with costs