86 N.J. Super. 437 (1965)
207 A.2d 194
THE PINGRY CORPORATION, COMPLAINANT-APPELLANT,
v.
TOWNSHIP OF HILLSIDE, RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS OF THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.
THE TOWNSHIP OF HILLSIDE, COMPLAINANT-RESPONDENT,
v.
THE PINGRY CORPORATION, RESPONDENT-APPELLANT, AND DIVISION OF TAX APPEALS OF THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1964.
Decided February 11, 1965.
*438 Before Judges CONFORD, KILKENNY and LEWIS.
*439 Mr. Nicholas Conover English argued the cause for appellant (Messrs. McCarter & English, attorneys).
Mr. A. Howard Finkel argued the cause for respondent Township of Hillside.
Mr. Arthur J. Sills, Attorney General of New Jersey, attorney for respondent Division of Tax Appeals, Department of the Treasury, filed a statement in lieu of brief pursuant to R.R. 1:7-4(b) (Mr. Alan B. Handler, First Assistant Attorney General, of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
The Pingry Corporation, owner and operator of The Pingry School, a private day school for boys, located in the Township of Hillside, appeals from a series of final judgments of the Division of Tax Appeals, Department of the Treasury, of the State of New Jersey.
In 1962 the municipality rendered 14 tax bills to Pingry assessing for taxation all of its property. Upon appeals to the Union County Board of Taxation, the assessments were set aside as to the personal property and the several school buildings including seven faculty houses, but were retained as to certain lands, including the lots upon which the seven faculty dwellings were erected. Hillside thereupon appealed to the State Division of Tax Appeals, and Pingry cross-appealed.
The Division entered final judgments affirming the cancellation of the assessments on the personal property, tennis courts, residence of the property superintendent, the equipment shed buildings, and the main school building and its curtilage except for the assessment as to land in excess of the five-acre statutory limitation. Judgments were also entered reinstating the assessments on the seven faculty houses and affirming the assessments on the lots upon which they were situate. Pingry prosecuted separate appeals to this court from the several judgments respecting the faculty dwellings, land and improvements. Hillside did not appeal or cross-appeal. *440 By an appropriate order the Pingry appeals were consolidated.
Appellant's tax exemption claim, herein asserted, is predicated upon the contentions that (1) it is a nonprofit school within the meaning of N.J.S.A. 54:4-3.6, and (2) its faculty houses are actually used for school purposes. The amounts of the assessments in question are concededly not in dispute.

I.
The pertinent language of N.J.S.A. 54:4-3.6 reads:
"The following property shall be exempt from taxation under this chapter: All buildings actually used for colleges, schools, academies or seminaries; * * * the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent; * * * provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit * * *." (L. 1941, c. 243, p. 663, § 1, and note latest amendment L. 1964, c. 42, § 1) (Emphasis supplied)
There is a dual aspect to the sine qua non of that legislation. For schools to be tax-exempt they must function as nonprofit organizations and their tax-free property must be "actually used for" school purposes. Exemptions of such a character when used "exclusively" for educational purposes are afforded constitutional protection. Constitution of 1947, Art. VIII, § I, par. 2.
The evidence presented at the hearing before the Division included certified copies of certificates of incorporation and amendments thereto, letters indicating that the school was exempt from United States income taxes, a schedule of comparative tuitions of Pingry with other schools, various auditors' reports, a summary of the school's faculty housing rental income, a tabulation of salary ranges, depositions of a certified public accountant and a former headmaster, now a school *441 consultant, and the testimony of the present headmaster, who was also the chairman of the finance committee of the board of trustees. No testimony was proffered on behalf of Hillside. Additionally, the parties entered into a 21-point stipulation of facts which stated, inter alia, (a) "the buildings belonging to the school were paid for from the proceeds of gifts and donations from individuals and charitable foundations"; (b) "on the basis of the annual auditor's reports * * * the school would show an operating deficit without the receipts of annual giving," and (c) "the availability of faculty housing has facilitated obtaining and retaining competent faculty members."
It appears from the record that The Pingry School has been in existence over 100 years. Prior to 1953 it was located in the City of Elizabeth, and thereafter in the adjoining Township of Hillside. The school was originally incorporated in 1892 in the form of a profit-making organization. But, in 1922, it became a nonprofit corporation under "An Act to Incorporate Private Schools" (L. 1922, c. 117, p. 210, now R.S. 15:11-9 to 15). It was reincorporated in 1962 under our statutes dealing with corporations not for pecuniary profit and, in particular, pursuant to R.S. 15:1-12. Pingry operates solely as a boys' day school and has a present enrollment of 535 students in grades 4 to 12. The school is managed by a board of trustees, currently 27 in number, who serve without remuneration.
In a landmark case, The Kimberley School v. Town of Montclair, 2 N.J. 28 (1949), a private day school organized as a nonprofit corporation under R.S. 15:1-1 et seq. had been denied exemption from taxation of its real and personal property, owned and used for school purposes, because it was not fundamentally charitable or philanthropic. On appeal our Supreme Court, in applying N.J.S.A. 54:4-3.6 to the facts there presented, expressly abandoned the judge-made "charitable or philanthropic" criterion which had been followed in a line of decisions, of which Carteret Academy v. State Board, 102 N.J.L. 525 (Sup. Ct. 1926), affirmed per curiam 104 *442 N.J.L. 165 (E. & A. 1927), and Dwight School of Englewood v. State Board Tax Appeals, 114 N.J.L. 594 (Sup. Ct. 1935), affirmed per curiam 117 N.J.L. 113 (E. & A. 1936), are representative, and declared:
"It is our conception that the test imposed by the statute is simply, in the words of Mr. Justice Swayze, whether or not the school is `conducted for the purpose of making a profit' (Institute of Holy Angels v. Bender, 79 N.J.L. 34, 36 (Sup. Ct. 1909); see also Princeton v. State Board of Taxes, 96 N.J.L. 334, 339 (Sup. Ct. 1921)). Each institution seeking exemption must be examined in the light of its past and present scheme of operation to determine its eligibility, due regard being had not so much for the question of whether its income exceeds the cost of operation in any particular year or years, but rather whether charges are fixed with the obvious intention of yielding a profit." (2 N.J., at p. 37)
That case is here controlling. See also, City of Trenton v. State Div. of Tax Appeals, 65 N.J. Super. 1 (App. Div. 1960). Compare the earlier case involving the same school, City of Trenton v. State Board of Tax Appeals, 127 N.J.L. 105 (Sup. Ct. 1941), affirmed per curiam, sub nom. City of Trenton v. Rider College, 128 N.J.L. 320 (E. & A. 1942). Note, Conford, "State and Local Taxation," 4 Rutgers L. Rev. 101, 109-110 (1949).
The Commissioner in his opinion for the Division specifically found that The Pingry School "from the method of its constitution, from the method of its operation is clearly an educational institution operated not for profit." There is abundant proof to support that finding which we need not further discuss as Hillside does not claim otherwise in its brief, and it did not appeal or cross-appeal from the major tax exemptions accorded Pingry by the judgments of the Division afore-mentioned.

II.
The single remaining issue for resolution is whether the seven faculty houses and premises owned by Pingry are "actually used for" the school to such an extent as to merit tax exemption.
*443 The structures in controversy are dwellings in a group complex located at the north end of the school grounds. The land area on which they are built consists of 3.35 acres of the entire school tract of land totaling 31.75 acres. One of the buildings is a four-bedroom house, each bedroom being rented to a single male teacher at $15 per month. Another is occupied by the headmaster and his family, who pays $72 per month. The remaining five houses are rented to members of the faculty and their families at a rate of $60 per month. Each rental is in the form of an oral agreement which terminates upon the tenant's leaving the employ of Pingry. The proofs, however, indicate that at least since 1958 the expenses incident to the maintenance of such housing have exceeded the rental income derived therefrom.
While the charging of rent is an element to be considered in the over-all appraisal of the facts, the receipt of income from the faculty houses does not per se establish their nonexempt status. Note, Mayor, &c., etc., of Princeton v. State Board of Taxes and Assessments, 96 N.J.L. 334 (Sup. Ct. 1921); Princeton [Country Day] School v. State Board, 113 N.J.L. 515, 519 (Sup. Ct. 1934). But see City of Hoboken v. Division of Tax Appeals, 134 N.J.L. 594 (Sup. Ct. 1946), modified 136 N.J.L. 328 (E. & A. 1947). Cf. People ex rel. Clarkson Mem. College of Technology v. Haggett, 191 Misc. 621, 77 N.Y.S.2d 182 (Sup. Ct. 1948), affirmed 274 App. Div. 732, 87 N.Y.S.2d 491 (App. Div. 1949), affirmed o.b. 300 N.Y. 595, 89 N.E.2d 882 (Ct. App. 1949); Pierce v. Inhabitants of Cambridge, 2 Cush. 611 (Mass. Sup. Jud. Ct. 1849), cited in State v. Ross, infra, 24 N.J.L., at pp. 502-503.
The evidence demonstrates that the salary range of the Pingry faculty is somewhat lower than that of teachers in nearby public school systems. No comparison has been offered between the compensation paid to the Pingry teachers who have been provided with rented housing and the salary vided or with those members of Pingry's faculty who must ranges of private day schools where no housing has been proseek *444 housing facilities elsewhere. Only the headmaster and nine of a total of 47 members of the teaching staff are provided with such rental accommodations.
There is nothing in the record to suggest that the faculty dwellings, including the one in which the headmaster resides, are used for any purpose connected with the school (administrative, supervisory or otherwise) other than furnishing some of its instructors a place to reside. There is no showing of a lack of available residential properties or living conveniences in the Hillside-Elizabeth area, or the existence of any necessity or emergent circumstances that would require any of the Pingry masters to live at the school.
When the headmaster was interrogated as to why the school had to have faculty houses, he replied:
"It has the houses for two purposes. One is to be an additional attraction to get a good teacher that we particularly want, and Number Two, to keep those teachers that we think we particularly like."
The force of Pingry's argument is that the availability of campus faculty housing facilitates the obtaining and retaining of competent educators for the school. To adopt that thesis as an underlying rationale in support of tax exemption would posit a rule that incidental benefits or inducements are tantamount to the statutory requirement of "actual use for" school purposes. Such a rule would engraft upon N.J.S.A. 54:4-3.6 an extended meaning not reasonably contemplated within a fair interpretation of the legislative intent.
A university stadium was held not to be tax-exempt in Trustees of Rutgers University v. Piscataway Twp., 134 N.J.L. 85, 88 (Sup. Ct. 1946), where the court declared, "When the legislature wrote into the exemption statute the phrase `actually used for colleges' it meant something more than an occasional or incidental use." A football field and stadium might well be an inducement to obtain and retain instructors associated with the physical education program of the university. It might also be an inducement for increasing student enrollment or attracting financial contributions *445 to the school. But such incidental benefits would not supply the legislative requirement for tax exemption.
We are cited to the early and leading case of State v. Ross, 24 N.J.L. 497 (Sup. Ct. 1854), for the proposition that "it has now been settled beyond dispute" that a dwelling occupied as a residence by the professional head of an educational institution is "actually used" for school or college purposes. The facts are not analogous.
Pingry is a country day school for boys who are daily transported to and from the school. Neither dormitories nor facilities of any kind are provided for the pupils to live at the school or on the campus grounds. In that respect Pingry is no different from the public schools of comparable grades where the teachers live off campus and are not called upon for supervisory duty after classroom hours. Its faculty houses, although within the campus area, are rented and occupied solely for living accommodations.
The Ross case involved the College of New Jersey in the Borough of Princeton, now known as Princeton University. Its trustees were assessed for the dwelling houses and grounds occupied by the president, vice-president, professors and steward, and also for the property known as "Edgehill" occupied as a grammar school by an individual at an annual rent. By its charter the trustees of the college were authorized "to acquire, receive and possess lands, and to purchase, receive or build any house or houses, or any other buildings, as they should think needful or convenient for the use of the said college * * *." The plan of the school was "to board and lodge, as well as to instruct the students, and as convenient to that purpose, and needful, as well for economy as the proper government of the institution, to provide places of residences for their president, professors, stewart and servants." The school personnel did not pay rent and they occupied their respective living quarters by permission of and during the pleasure of the trustees. Under those facts the faculty dwellings and curtilage were deemed tax-exempt and the assessment thereon was set aside. In dealing with the *446 "Edgehill" property, the court found that it was not necessary to the success of the college nor to the accomplishment of its plan and the objectives of its charter and, consequently, it was held not to be within the exempting clause of the statute.
The authorities are legion which recognize circumstances warranting a determination that a particular dwelling facility of an educational institution is in fact actually used for school or college purposes. The ratio decidendi of the decisions so holding can be ascertained by reference to a few examples:
 The Institute for Advanced Study at Princeton owned a substantial property known as Olden Manor located on its main campus. It was the principal residence of the director and his family to whom it was furnished rent-free and as a term of employment. It was also used by the director, on behalf of the institute, for official entertainment and for numerous faculty and trustees' meetings and conferences. Princeton Twp. v. Institute for Advanced Study, 59 N.J. Super. 46 (App. Div. 1960).
 A building acquired by Rutgers University as a dwelling for its president was situate near the campus and was remodeled and enlarged for the purpose of enabling the president to hold official meetings of faculty, deans, students and administrative personnel, as well as to greet and entertain official guests of the university. Trustees of Rutgers College v. Piscataway Twp., 20 N.J. Misc. 127, 25 A.2d 248 (State Bd. Tax App. 1942), affirmed sub nom. Piscataway Twp. v. State Bd. of Tax Appeals, 129 N.J.L. 261 (Sup. Ct. 1942), affirmed per curiam 131 N.J.L. 158 (E. & A. 1944).
 The language employed in Mayor, &c., etc. of Princeton v. State Board Taxes, supra, 96 N.J.L., at p. 340, is worthy of quotation. After finding that a day school for girls and boys, known as "Miss Fine's School," was not conducted for profit, the court then proceeded to the next issue, saying:
"Finally, it is contended that the school building is not `actually used' for school purposes within the meaning of the act.
We think it is. It is a three-story building. At the time of the assessment all of the rooms on the first floor, twenty-six of the twenty-nine *447 rooms on the second floor, and nine of the nineteen rooms on the third floor were in actual use by the school. The plan and expectation was, and is, to use them all in the near future. The mere fact that some of these rooms were occupied as dormitories by teachers and caretakers of the school, who paid rent, which was applied to the salaries of teachers, does not deprive the school of its exemption under the act."
 A parochial school structure, although used mainly as a place of residence for the sisters who taught in the school, was also used "in part for religious services open more or less to the public." Borough of Chatham v. Sisters, St. Elizabeth, 92 N.J.L. 409, 410 (E. & A. 1918).
The Pingry factual complexion does not come within the exemptive ambit of those judicial pronouncements or any reported case in this State cited by counsel in their respective briefs or disclosed by our independent research.
The decisional authorities elsewhere are noteworthy but must be read in light of their jurisdictional legislation. The New Jersey view, as indicated supra, finds support in Trustees of Phillips Academy v. Inhabitants of Andover, 175 Mass. 118, 55 N.E. 841, 48 L.R.A. 550 (Sup. Jud. Ct. 1900); Trustees of Thayer Academy v. Board of Assessors of Town of Braintree, 232 Mass. 402, 122 N.E. 410, 412 (Sup. Jud. Ct. 1919); South Lancaster Academy v. Inhabitants of Town of Lancaster, 242 Mass. 553, 136 N.E. 626, 629 (Sup. Jud. Ct. 1922); Burris v. Tower Hill School Ass'n, 36 Del. 577, 179 A. 397, 399 (Super. Ct. 1935); New Canaan Country School v. Town of New Canaan, 138 Conn. 347, 84 A.2d 691 (Sup. Ct. Err. 1951); Doane College v. County of Saline, 173 Neb. 8, 112 N.W.2d 248 (Sup. Ct. 1961); People ex rel. Kelley v. Avery Coonley School, 12 Ill.2d 113, 145 N.E.2d 80 (Sup. Ct. 1957); Appeal of University of Pittsburgh, 407 Pa. 416, 180 A.2d 760 (Sup. Ct. 1962). But see the New York case of People ex rel. Clarkson Mem. College of Technology v. Haggett, supra; Church Divinity School of Pacific v. County of Alameda, 152 Cal. App.2d 496, 314 P.2d 209 (D. Ct. App. 1957); County of Hanover v. Trustees of Randolph-Macon College, 203 Va. 613, 125 *448 S.E.2d 812 (Sup. Ct. App. 1962); Concordia College Corporation v. State, 265 Minn. 136, 120 N.W.2d 601 (Sup. Ct. 1963). The general rule as stated in 84 C.J.S. Taxation, § 287, pp. 576-577, is that:
"Exemption ordinarily extends only to such property of an institution as is actually used for its proper and legitimate educational purposes, in a direct and primary sense, unless the statute is broad enough to include property owned by the institution whether or not actually used and occupied by it."
For a further discussion, refer to Annotation, "Property used by personnel as living quarters or for recreation purposes as within contemplation of tax exemptions extended to property of religious, educational, charitable, or hospital organizations," 15 A.L.R.2d 1064, 1070 (1951).
It is fundamental that ordinarily all property shall bear its just and equal share of the public burden of taxation. Princeton University Press v. Borough of Princeton, 35 N.J. 209, 214 (1961). "Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption," and the burden of proving a tax-exempt status is upon the claimant. Ibid. The party seeking an exemption has the burden of bringing itself clearly within the exempting statute and overcoming all doubts which are resolved against it. See Princeton Tp., County of Mercer v. Tenacre Foundation, 69 N.J. Super. 559, 563 (App. Div. 1961); West Jersey Grove Camp Ass'n v. City of Vineland, 80 N.J. Super. 361, 365 (App. Div. 1963). Pingry, as to the dwelling facilities for its masters, has not carried that burden.
There is substantial evidence to support the fact findings of the Division, and even if its determination were debatable, it should be sustained. City of Passaic v. Botany Mills, 72 N.J. Super. 449, 453 (App. Div. 1962).
The judgments under review are affirmed.