95 N.J. Super. 583 (1967)
232 A.2d 178
BLAIR ACADEMY, APPELLANT,
v.
TOWNSHIP OF BLAIRSTOWN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENT.
BLAIR ACADEMY, PETITIONER-RESPONDENT,
v.
TOWNSHIP OF BLAIRSTOWN, A MUNICIPAL CORPORATION OF NEW JERSEY, RESPONDENT-APPELLANT, AND DIVISION OF TAX APPEALS OF THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1967.
Decided June 30, 1967.
*585 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Theodore Sager Meth argued the cause for Blair Academy (Messrs. Meth. & Wood, attorneys).
Mr. Archie Roth argued the cause for Township Blairstown.
Mr. Arthur J. Sills, Attorney General of New Jersey, attorney for respondent Division of Tax Appeals, filed a statement in lieu of brief (Mr. Elias Abelson, Deputy Attorney General, of counsel).
*586 The opinion of the court was delivered by KILKENNY, J.A.D.
Township of Blairstown appeals from a judgment of the State Division of Tax Appeals setting aside assessments for taxes for the year 1963 on the ground that the subject buildings and improvements of Blair Academy were tax exempt under N.J.S.A. 54:4-3.6. Blair Academy appeals from a judgment of the State Division of Tax Appeals dismissing its appeals from assessments for taxes for the year 1965 because the petitions of appeal, as originally filed, did not assert tax exemption as the basis of the appeal. The appeals were consolidated for argument.
Blair Academy's claim of tax exemption for the years in issue is based on N.J.S.A. 54:4-3.6 which provides in pertinent part:
"The following property shall be exempt from taxation under this chapter: All buildings actually used for colleges, schools, academies or seminaries; * * * the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof * * * and does not exceed 5 acres in extent; * * * provided * * * the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit, * * *."
The State Division found that Blair Academy qualified for tax exemption under that statute as to the buildings under review.
There is substantial evidence in the record which supports this finding by the State Division. The school's existence dates back to 1848. From then until 1889 it was sustained in large measure by generous grants from John I. and Ann Blair. It was for many years operated by trustees responsible to the Presbytery of Newton and had close ties to the First Presbyterian Church. It is a boy's preparatory school whose students are for the most part boarders, coming as they do from widely scattered areas. Thus, at the time of the hearings before the State Division there were 306 boarding students and 19 day students more or less.
*587 In 1928 the then State Board of Taxes and Assessments ruled that the school was not entitled to tax exemption because it had not been incorporated under the laws of New Jersey as authorized to carry out a purpose for which this exemption might be allowed, but was operating under three trust deeds under the control of and as a subsidiary to the Presbytery of Newton, New Jersey. This judgment was affirmed by the courts. Bd. Trustees, etc., Blair Academy v. State Bd. of Taxes and Assessments, 6 N.J. Misc. 498, 141 A. 789 (Sup. Ct. 1928), affirmed o.b. 106 N.J.L. 556 (E. & A. 1929).
To cure this deficiency Blair Academy incorporated in September 1928 as an educational corporation not for profit under the predecessor statute of our present Title 15. Legal title to the subject properties became vested in the Academy pursuant to several deeds of conveyance executed thereafter. The township recognized all of the school's buildings as tax exempt from 1928 until 1963. The Federal Government acknowledged its nonprofit status by exempting it from the payment of income tax and by granting it the usual franking privilege. Moreover, the record demonstrates that the school is a nonprofit organization within the interpretation laid down by us in City of Trenton v. State Division of Tax Appeals, 65 N.J. Super. 1 (1960), and in the case of Kimberly School v. Town of Montclair, 2 N.J. 28 (1949).
Despite its many buildings, Blair Academy had claimed up until 1965 only a total of five acres as tax exempt, paying taxes on the remainder. It voluntarily contributed $3,000 annually to the township treasury as a gesture of goodwill. As hereinafter noted, it furnished from its own supply free water for municipal purposes, the township merely supplying the hydrants. An harmonious and cooperative relationship existed until 1963 when the township levied tax assessments against eight houses used as residences by members of the faculty, the residence occupied by the school's full-time business manager, a maintenance shop and a so-called maintenance garage. This led to a withdrawal of the school's *588 voluntary contribution to the township treasury and the 1963 tax appeals.
The State Division properly held that the faculty houses were tax exempt. Pingry Corp. v. Hillside Tp., 46 N.J. 457 (1966), reversing 86 N.J. Super. 437 (App. Div. 1965), removes all doubt as to the propriety of that determination. The Supreme Court held that the seven Pingry faculty houses were "actually used" for school purposes and hence were tax exempt, even though the faculty members occupying them paid a nonprofit rental therefor and the use was solely for residential purposes. A fortiori, that same rule would be applicable to the eight faculty houses herein where occupancy is without any rental and the residences were used in part for consultations with students and similar school purposes.
As to the residence occupied by the business manager and treasurer, we agree with the State Division that this building was also tax exempt. This school official was required to live on the school grounds and to be available on a 24-hour a day basis. He was responsible not only for the school's financial affairs but also for maintenance of the properties and buildings, as well as attending to all of the Academy's business needs. He also acted as clerk at meetings of the board of trustees. A school official acting in these many capacities may be housed on the school's premises for the convenience of the institution. Residential quarters of a tax exempt institution used for such a purpose are also tax exempt. Princeton Tp. v. Tenacre Foundation, 69 N.J. Super. 559 (App. Div. 1961).
The maintenance shop is a one-story building, wherein the school keeps its lathes and tools used in the maintenance of its buildings. It contains a paint shop, carpentry shop and plumbing supply shop  all used only for the school's maintenance work. The maintenance garage across the street houses the school's trucks, mowing equipment, snow plows and similar items used solely for maintenance of the school grounds. These auxiliary buildings are part of the *589 school plant, are essential to the maintenance thereof, and were justifiably declared by the State Division to be tax exempt.
Blairstown contends that the Academy engages in several commercial proprietary functions or business ventures which preclude its claiming the status of a nonprofit corporation. Reference is made to four activities engaged in by Blair Academy, to wit, (a) its operation of a water department, (b) its opening to the public of the school golf course, when the students are not using it, (c) a summer tennis clinic, when school is not in session, and (d) the use of a catering system, the Slater System, in furnishing meals to the students, faculty members and their wives.
The water facility came into being when John I. Blair, the founder, desired to obtain water for the proposed school. The water had to be obtained from Paulins Kill which was 1.6 miles from the school. This necessitated bringing the water through the town. Citizens of the community petitioned for the right to connect to the water mains and were given permission to do so. This subjected the school's water department to regulation as a public utility, albeit no profit was sought and it never sought an increase in rates for 40 years. When an increase was sought in 1957 to minimize its losses in the operation, the Public Utilities Commission granted the request and suggested that the school should come back again for further relief.
Blair Academy charges itself for its water supply the difference between the total cost of the maintenance of the water system and what it receives in water rents. By this method of bookkeeping Blair pays much more than one-half of the cost, although it uses less than one-half of the water. As noted above, water is furnished to Blairstown's hydrants free. The State Division properly observed that this small sideline operation thus carried on "hardly makes Blair a profit making institution."
The school's golf course is used by the school teams and student body. When they are not using it, the citizens of *590 Blairstown may play for a fee. But there is no profit motive or profit making. Similarly, the tennis clinic in the summertime when the school is not in session is a de minimis operation which does not materially affect Blair's nonprofit status.
The use of a catering system to feed the students and faculty of this boarding school cannot be regarded as a commercial activity or business venture of the school. Blair pays for this catering service an annual charge of $376 per person. It has been found expedient by the management of the school to have such a private caterer, in lieu of providing its own personnel to furnish this necessary service. The practice has been carried on for at least ten years. Nor do we find material as affecting Blair's nonprofit status that the catering system uses Blair's kitchen equipment and facilities in its performance, or that some of the caterer's employees were permitted by the school to occupy quarters at the school, rent-free.
The township also maintains that the Academy is not entitled to tax exemption as to the maintenance shop acquired in 1960, or the maintenance garage and the Clee House acquired in 1961, because it did not file with the municipal tax assessor "initial statements" showing the right to the exemptions claimed within the time prescribed by N.J.S.A. 54:4-4.4. That section provides that the "municipal tax assessor shall * * * obtain" such initial statements on or before November 1 of each year, "if one has not theretofore been filed." (Emphasis added). When an initial statement has theretofore been filed, then "not later than November 1 of every third succeeding year, said assessor shall obtain a further statement under oath from each owner of real property for which tax exemption is claimed * * *." (Emphasis added).
On September 28, 1951 Blair Academy filed its initial exemption statement pursuant to the then recently enacted statute, N.J.S.A. 54:4-4.4. Statements were filed annually *591 until the statute was amended to require filing only every three years. There was a filing in 1959, and then on November 30, 1961. The assessor knew that Blair had acquired the additional properties in the township in 1960 and 1961. One set of buildings thus acquired was across the street from his place of business. He knew the use to which they were put. Yet he did nothing to obtain any further statement from the Academy claiming tax exemption as to these buildings. Apparently both sides were of the impression that further statements would be sought and given in futuro, if they were deemed necessary.
The failure of the municipal assessor to obtain the statements, which N.J.S.A. 54:4-4.4 makes it mandatory for him to obtain, should not deprive this nonprofit academy of the tax exemption to which it is entitled by law. The assessor was fully aware of the tax exempt status of Blair, which the municipality had fully recognized for 35 years prior to 1963. Blair had filed through the prior years the statements showing its right to tax exemption. If the assessor had requested any further statement, the Academy would undoubtedly have furnished it. Accordingly, we find no substantial merit in this contention.
We consider next the propriety of the State Division's dismissal of Blair's 1965 tax appeals. For that year the township levied tax assessments not only against the faculty and business manager's residences, the maintenance shop and maintenance garage, as had been done in 1963 and again in 1964, but also against all of Blair's buildings, including the main school unquestionably devoted to educational purposes. These 1965 assessments amounted to $2,745,578. This was $2,634,482 in excess of admittedly taxable properties.
Blair filed timely appeals to the Warren County Board of Taxation. In each of its five petitions of appeal, it stated as the substantive basis therefor:
"* * * at which assessment your petitioner is aggrieved because the said property is exempt from taxation under R.S. 54:4-3.6." *592 Copies of these petitions were served on the township.
By consent these appeals were dismissed without prejudice by the county board to facilitate presentation of the issue to the State Division of Tax Appeals. The practicality of so doing is obvious, since this method avoided a duplication of effort. Petitions of appeal to the State Division were then timely filed. However, through inadvertence, the forms as filled out and presented to the State Division neglected to state expressly the claim of exemption, but followed the usual pattern of praying that the specified assessments "be reduced to true value of the property."
This inadvertence was not discovered until the commencement of the hearings before the State Division. Blair's attorney requested an amendment of the petitions of appeal to conform to the petitions of appeal before the county board. The Division granted the amendment with reservations since application therefor had been made after December 15, the deadline for filing petitions of appeal to the State Division of Tax Appeals. It found from the proofs, as it had with reference to the 1963 appeals, that the buildings involved in this large assessment were actually within the exempt category. It also accepted the stipulation of the assessor and Blair as to the amount of land and the value thereof to be exempted for the several buildings involved, if tax exemption of the buildings was granted. Thus, the Division concluded as to the proper amounts of the assessments, if it were deciding the case on its merits. Neither side challenges the correctness of the figures.
However, the Division dismissed the 1965 appeals upon the ground that Blair's petitions of appeal were procedurally deficient because of the failure to allege therein that the Academy was claiming tax exemption. It concluded that the cut-off date of December 15 precluded it jurisdictionally from allowing an amendment of the petitions thereafter to assert a claim of tax exemption. It held inapplicable the "freeze" statute, N.J.S.A. 54:2-43, which makes a judgment final of the Division of Tax Appeals binding upon the *593 municipal assessor and the taxing district for the assessment year and for two assessment years succeeding the assessment year covered by the judgment, on the ground that the statute applies merely to valuations and not to cases involving exemptions.
We agree that the "freeze" statute does not apply, so that the Division's determination of tax exemption as to the 1963 appeals did not become conclusive and binding as to the 1965 appeals on the issue of tax exemption. Newark v. Fischer, 8 N.J. 191, 199 (1951), so holds.
However, we do not agree that the amendment sought and granted exceeded the jurisdictional power of the Division to grant it, or that it set up some new claim for relief beyond the time permitted by the statute to assert it.
The Division relied upon Cleff Realty Co. v. Jersey City, 41 N.J. Super. 465 (App. Div. 1956), and Hackensack Water Co. v. Tp. of North Bergen, 8 N.J. Super. 139 (App. Div. 1950), affirmed in part in 2 N.J. 157 (1950). Those cases are distinguishable. In each of them the taxpayer's appeal to the county board of taxation requested a reduction of the assessments to true value; and thereafter on appeal to the State Division the taxpayer sought to amend its petition, after the time had expired, to charge that the assessments were discriminatory, thus stating a new cause of action. Denial of such an amendment was upheld. In the instant case, Blair sought an amendment in the Division to assert the same cause of action, the same claim for relief which it had asserted before the county board of taxation.
No one was in any honest doubt as to the relief being sought in the Division. The appeals to the county board, where tax exemption was the only claim asserted by the Academy, had been dismissed by consent and without prejudice so that double hearings would be avoided. When the township raised this surprise issue at the inception of the hearings in the Division, Judge Gotshalk stated:
"I always understood this was an exemption case."
*594 The 1963 tax appeals were being heard at the same time and on the same proofs, and they involved the single issue of tax exemption. Neither side proffered any proofs as to valuations.
Judge Gotshalk found that any claim of surprise when the motion to amend was made was "hardly credible" in view of the fact that the case had been pending some months and a brief had been filed, and "although there was no hearing before the County Board, * * * extensive briefs were filed months before hearing." Moreover, the taxpayer and the township had argued about the matter for at least two years and, in addition, the taxpayer had been exempted for close to 35 years.
Allowance of the amendment did not cause surprise and it did not prejudice the township in its ability to present its legal and factual position fully. Rule 16:8-11.160 of the Revised Rules of the Division of Tax Appeals expressly provides that petitions of appeal may be amended, so long as the amendment does not add new subject matter, "or substitute a new or different cause of action pleaded after the time for appeal has expired." Rule 16:8-21.100 provides that the practice and procedure before the Division "shall conform to that prevailing in the Courts of this State * * * to the end that substance and not form shall govern, and that a final determination of all matters before it may be properly reached." Our rules of practice for the courts favor a liberality of amendment of pleadings. R.R. 4:15. There is an "ever-broadening policy against the procedural frustration of just determinations between parties on the ultimate merits". Ciocca v. Hacker, 4 N.J. Super. 28, 33 (App. Div. 1949).
We conclude that the amendment of the petitions of appeal was proper and the 1965 appeals should not have been dismissed on the basis that such an amendment was impermissible. The determinations on the merits as made by the State Division as to the 1965 tax assessments were proper both as to the tax exempt buildings and personalty and as to the stipulated curtilages of land for the several buildings.
*595 The judgment as to the 1963 tax appeals is affirmed. The judgment dismissing the 1965 tax appeals is reversed and the matter is remanded to the State Division to enter a judgment in favor of Blair Academy, reducing the tax assessments as to the buildings, personal property and lands found by the State Division to be tax exempt.