ANDREW, J. T. C.
In this case, the Tax Court is required to determine if the George Street Playhouse, Inc., is entitled to an exemption from local property taxation for the property it owns in New Brunswick for the tax year of 1979.
The subject of this litigation is a theater owned by defendant George Street Playhouse, Inc. The assessor for plaintiff City of New Brunswick assessed defendant’s property for the tax year 1979 at $72,000 (Land — $36,000; Improvements — $36,000). An appeal of that assessment by defendant to the Middlesex County Board of Taxation resulted in a determination that the property was exempt from local property taxation pursuant to N.J.S.A. 54:4r-3.6. New Brunswick seeks a reversal of that determination in this court. The parties have submitted this matter on a stipulation of facts supplemented with memoranda of law.
*409 Defendant was organized as a nonpecuniary profit corporation under Title 15 of the New Jersey Statutes. It was organized to “promote the artistic and cultural welfare of the citizens of New Jersey by the encouragement and presentation of dramatic, musical and dance programs of a high quality,” and to “encourage young people to become acquainted with drama and to participate therein.” Defendant’s certificate of incorporation provides that in the event of its dissolution no income is to inure to the benefit of private individuals.
Among its activities defendant presents theatrical performances, conducts dramatic workshops for community residents and schools, maintains a traveling children’s company which presents free dramatic presentations to area schools, and provides a vehicle for local participation in the arts, stage design and production management.
Defendant charges an admission fee for its performances. Approximately 53% of its operating expenses are financed by ticket sales. The remainder of its income comes from public, private and foundation grants and gifts. The actors, administrative staff and production staff employed by defendant are paid salaries. During its 1978-79 and 1979-80 seasons, defendant paid out the following amounts:
1978-79 1979-80
Actor salaries $ 98,978 $ 88,427
Administrative staff salaries 116,065 132,083
Production staff salaries 95,887 93,592
Artistic fees 13,778 17,712
Total $324,708 $331,814
N.J.S.A. 54:4-3.6 provides an exemption from local property taxation for nonprofit corporations devoted to any of several named objectives advancing the public welfare. In pertinent part it provides as follows:
*410 The following property shall be exempt from taxation under this chapter: ... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children .... the land whereon any of the buildings hereinbefore mentioned are erected, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent; the furniture and personal property in said buildings if used in and devoted to the purposes above mentioned ... provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit .... The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed....
To qualify for the exemption as it applies herein defendant must (1) be organized exclusively for the moral and mental improvement of men, women and children, and (2) not be conducted for profit.
Insofar as the first criterion is concerned, the George Street Playhouse cannot be materially distinguished from the theater group deemed exempt from real property taxation in Chester Theatre Group v. Chester, 115 N.J.Super. 360, 279 A.2d 878 (App.Div.1971). The taxpayer in that case, the Chester Theatre Group of the Black River Playhouse (the “Group”), was a New Jersey nonprofit corporation organized to promote interest in the dramatic arts and to educate the general public in the arts. Its charter provided that no part of any income would inure to the benefit of any individual, and upon its dissolution all assets would be distributed only to similarly intentioned nonprofit corporations. The Group’s theater property was used for the presentation of plays, drama workshops, art displays and musical productions. The Group also maintained a traveling company that had performed before 4,000 children throughout the country. An admission fee of $2 was charged for performances which was “just enough” to support the Group’s function. None of the performers received any compensation.
The court reversed the finding of the Division of Tax Appeals that the Group did not satisfy the statutory requirement for exemption — that it be “actually and exclusively used for the moral and mental improvement of men, women and children.” *411 Without attempting a precise definition of “moral and mental improvement,” the court was satisfied that the Group’s activities fell well within the ambit of the statutory language. The court said the following regarding the dramatic and musical arts and the public good:
Through its dramatic offerings and the presentation of musical recitals the Theatre Group seeks to enrich the experience of its members and patrons and to ennoble and strengthen their character....
It is generally accepted that dissemination of literary material through the dramatic arts and the presentation of musical recitations advance the intellectual and social bases of man in general....
Although the scope of the Group’s activities is relatively limited by the size and geographical situation of the theatre, the availability of the programs offered advances and benefits the general public morally and intellectually at little or no expense to the individual. Id. [at 365-366, 279 A.2d 878].
The activities of defendant are essentially the same as those of the Chester Theatre Group. Both organizations stimulate and cultivate public interest in the performing arts through a variety of educational programs and public performances. The George Street Playhouse has no less or different an impact on the moral and mental improvement of our citizens than does the Chester Theatre Group. The fact that the actors and staff employed by defendant are paid salaries does not detract from the beneficial effect of defendant’s activities upon the public. If anything, the employment of professional actors and staff insures a high standard of quality for all the defendant’s undertakings. Defendant qualifies as a corporation organized exclusively for the moral and mental improvement of men, women and children.
Plaintiff asserts, however, that the fact that defendant pays its employees disqualifies it as a corporation “not conducted for profit,” which is the second criterion with which defendant must comply in order to obtain exemption status. Plaintiff maintains that defendant operates a “commercial rather than an amateur venture. The actors and staff of the defendant are not members of an amateur community group but they are paid professionals. All receive salaries paid by the theatre.” In such circumstances, plaintiff maintains, a tax exemption was not intended by the Legislature.
*412 The “nonprofit” criterion for exempt status was closely examined by our Supreme Court in Kimberley School v. Montclair, 2 N.J. 28, 65 A.2d 500 (1949). At issue in that case was the qualification of the private day school for an exemption from taxation pursuant to N.J.S.A. 54:4-3.6.[1] During the years in question the school had an annual income of $60,323.94, the majority of it coming from tuition charges, and had yearly expenditures of $57,522.86, primarily teaching salaries. The court framed the statutory standard as follows:
It is our conception that the test imposed by the statute is simply, in the words of Mr. Justice Swayze, whether or not the school is “conducted for the purpose of making a profit” (Institute of Holy Angels v. Bender, 79 N.J.L. 34, 36 [74 A. 251] (Sup.Ct.1909); see also Princeton v. State Board of Taxes, 96 N.J.L. 334, 339 [115 A. 342] (Sup.Ct.1921)). Bach institution seeking exemption must be examined in the light of its past and present scheme of operation to determine its eligibility, due regard being had not so much for the question of whether its income exceeds the cost of operation in any particular year or years, but rather whether charges are fixed with the obvious intention of yielding a profit. Although necessarily viewed as a whole, the many facets of the organization and the operation of a school must each be considered and its significance appraised, [at 37-38, 65 A.2d 500],
The court found that the school was not being conducted for profit as of the relevant assessment date. The aspects of the school’s operation relied upon by the court included the following: tuition rates were not excessive; the small amount of excess income over expenses was not unreasonable and would be consumed by a small increase in teachers’ salaries, which were low; the owners of the property received no direct or indirect compensation, and the certificate of incorporation provided for the distribution of assets upon dissolution to other nonprofit educational institutions.
Also instructive for a determination of the nonprofit status of a corporation is the reasoning of the court in Trenton v. Tax Appeals Division, 65 N.J.Super. 1, 166 A.2d 777 (App.Div.1960). *413 The City of Trenton challenged a decision of the Division of Tax Appeals that certain properties owned by Rider College were tax exempt for the years 1957 and 1958, years in which the college operated at a profit. In finding that the college was not conducted for profit within the meaning of N.J.S.A. 54:4-3.6, the court said the following:
A prudent and foresighted board of trustees of any nonprofit educational institution ought to strive to avoid annual deficits, so as to minimize dependence upon solicitations from the alumni and others. But the intent to have an operating surplus or “profit,” rather than a loss, does not mean that the motive for the school’s continued existence and operation is the making of a profit....
If the college does show operational surpluses for some years, the crucial inquiry is, “Who gets the money?” If we can trace it into someone’s personal pocket, as the raison d’etre of the school, then, even though the form of operation is that of a so-called “nonprofit” organization, the college is not entitled to tax exemption, despite its educational function. Town of Montclair v. State Board, etc., 86 N.J.L. 497 [92 A. 270] (Sup.Ct.1914), affirmed 88 N.J.L. 374 [96 A. 44] (E. & A. 1915). Such an enterprise is commercial. But when we find, as here, that the surpluses, if any, go back only into the maintenance, expansion, and development of the school and its facilities, and that no individual can obtain anything more than just compensation for services, either presently or in the future, and that the funds of the institution cannot possibly be diverted to non-institutional uses, there cannot be said to be a profit-motive in the operation of the school. In granting tax exemption to the “colleges .. . not conducted for profit,” the State does not demand that no “profit” shall be made in any year, but rather that the real purpose of the school’s existence shall not be the making of money, [at 11-12, 166 A.2d 777; emphasis in original].
These cases prescribe a pragmatic inquiry into the question of nonprofitability. Implicit is the concept that a mechanical test centering on income and expense figures is to be avoided. As succinctly stated by the Supreme Court in Kimberley School v. Montclair, supra at 43, 65 A.2d 500, “Our sole function is to determine on all the facts, present and past, whether the (institution) in question was being run for the purpose of making money.” This approach has consistently been followed by our courts. Although in some instances the test has not been expressly stated, all the decisions reveal realistic, common-sense analyses of the actual organization and operation of the taxpayer corporations. In those cases in which a nonprofit status was found, the record clearly revealed a corporation dedicated solely to its stated nonprofit purposes even though some income was realized. See, e. g., Boys’ Club of Clifton, Inc. v. Jefferson Tp., *414 72 N.J. 389, 371 A.2d 22 (1977); Blair Academy v. Blairstown Tp., 95 N.J.Super. 583, 232 A.2d 178 (App.Div.1967), certif. den. 50 N.J. 293, 234 A.2d 401 (1967); Pingry Corp. v. Hillside Tp., 46 N.J. 457, 217 A.2d 868 (1966). When exemptions have been denied, a separate and distinct profit-making motive on the part of the taxpayer was apparent. See, e. g., Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 172 A.2d 420 (1961).
Examined in light of the foregoing, it is clear that defendant is entitled to an exemption as a corporation not conducted for profit. Defendant is not involved in a money-making venture. Ticket sales serve only to offset one-half of expenses. The fact that actors and staff are paid salaries, on which the plaintiff primarily rests its case, does not mean that the design of defendant is to make a profit. It is not even alleged that defendant’s income exceeded its expenses in the year at issue or in any other year. Even if it were so alleged, that fact alone would not transform the defendant into a corporation organized for pecuniary profit. Defendant’s purpose is that stated in its charter, namely, to promote the general welfare through the arts. Plaintiff has failed to demonstrate that defendant had a money-making objective, which it must do if it is to establish that defendant does not qualify as a corporation not conducted for profit. I find no evidence of a dominant profit motive attributable to defendant. A consideration of the significant features of the organization and operation of the George Street Playhouse convinces this court that, fundamentally, defendant, as of the appropriate assessment date, was not a commercial profit oriented enterprise. Therefore, I find that defendant is entitled to an exemption from taxation for the tax year 1979 as a nonprofit corporation organized exclusively for the moral and mental improvement of men, women and children.[2]
Judgment shall be entered accordingly.

The requirement that qualifying corporations not be conducted for profit is the same for all of the types of institutions named in the statute. Thus, the Kimberley School analysis of nonprofit status of a school applies with equal force to a corporation organized for the “moral and mental improvement of men, women and children.”

Although it is not controlling upon this court, it is noteworthy that defendant’s nonprofit status has been accepted for federal tax purposes and New Jersey sales tax purposes.