TRUSTEES OF Y. M. AND Y. W. H. A., OF NEWARK, APPELLANT, v. STATE BOARD OF TAX APPEALS AND CITY OF NEWARK, RESPONDENTS.

Submitted May 27, 1938—Decided September 16, 1938.

For the appellant, *Kessler & Kessler*.

For the respondents, *James F. X. O'Brien*.

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion *per curiam* in the Supreme Court.

PERSKIE, J. (Dissenting.) With greatest respect for the majority view of my colleagues, I do not concur in the result reached by them.

The question requiring decision in this case, as I see it, is whether the property of an association otherwise exempt from taxation, by virtue of *Rev. Stat.* 54:4-3.6 shall lose its exemption when, as here, that association permits other civic, educational, religious and charitable associations to use parts of its building and facilities, rent free, and, for non-profit making purposes.

*First:* Appellant was incorporated in 1921 pursuant to chapter 217, *Pamph. L.* 1921, *p.* 694. *Cf. Rev. Stat.* 16:19-1 to 9. It has steadfastly adhered to its chartered objectives. It owns a three-story building at High and West Kinney streets, Newark, New Jersey. Generally stated, the building consists of an auditorium, a library, sixteen club rooms, gymnasium, swimming pool, recreation rooms and offices. What exclusive and actual use does appellant make of that building?

Concededly, appellant uses its building for purposes which under the provisions of *Rev. Stat.* 54:4-3.6 exempts it from taxation. Appellant also permits the Jewish Guidance Bureau, which deals with problems concerning delinquent boys and girls, the Jewish Educational Society, which deals with the education of the youth, and the New Jersey Federation of Y. M. and Y. W. H. A.'s, which deals with the general activities of both organizations, to occupy office space in its building and occasionally also permits them to use its auditorium, but always rent free.

In addition thereto, appellant further permits other civic and religious groups, without regard to race, color or creed, to use its auditorium, upon stated occasions, for educational, philanthropic, religious and civic purposes providing the use to be made thereof is first approved by appellant, and providing further the contemplated use is permitted under the act and is not for profit making purposes. The charge for such use, if made, is a nominal one; it is sufficient merely to defray the costs of porter services incidental to such use.

*Second:* What income does appellant derive from its activities?

It has a membership of about four thousand, the greater number of whom pay membership dues of a dollar a year.

There are some of this number who, of course, pay more. Some pay annual dues of $4, $13.50, $16.50 and some (about one hundred) pay $26.50 a year. And there are about four thousand more who are permitted to use the building but who pay nothing. It does not refuse its privileges to any seeking them because of their inability to pay. It is one of the fifty-one beneficiaries of the Newark Community Chest Fund, a fund raised by voluntary contributions in Newark, New Jersey. For the year of 1936 it received $40,032.50 from this fund. Notwithstanding all this, appellant has for the past ten years carried on with an annual deficit. For the year of 1935 this deficit was $9,441.49. These annual deficits are made up with further solicitations of voluntary contributions.

*Third:* And so appellant operated and continued in possession of its building, up and until the year of 1935 when, for the first time, the taxing authorities of Newark levied an assessment against its property for the year of 1936. The assessment was $250,000 on the building and $29,700 on the land. The county board of taxation canceled the assessment on the ground that appellant's property was entitled to be exempt by virtue of *Rev. Stat.* 54:4-3.6, the pertinent portion of which provides as follows:

"The following property shall be exempt from taxation * * * all buildings actually and exclusively used in the work of the association for the moral and mental improvement of men, women and children."

The city of Newark appealed to the State Board of Tax Appeals. The latter reversed the action of the county board of taxation, and ordered the assessment reinstated. That determination was rested upon the premise that appellant's property lost the right to be exempt from taxation because of the permissive use made of the building and its facilities by other organizations. The Supreme Court, on *certiorari* (119 *N. J. L.* 504; 197 *Atl. Rep.* 372), affirmed the State Board of Tax Appeals. That affirmance was also rested upon the ground that the building was not actually and exclusively used by appellant "for those purposes which, in the legislative

plan, merit exemption." In support of its affirmance the Supreme Court held that the judgment of the State Board of Tax Appeals was an adherence to the rule laid down by it in the following cases: *Westervelt et al., Trustees for Pioneer Lodge No. 70, F. & A. M.,* v. *City of Hackensack,* 59 *N. J. L. J.* 126; *Orange K. of C. Holding Co.* v. *City of Orange,* 59 *Id.* 17, and which rule was approved by the Supreme Court in the following cases: *Y. W. C. A. of Harvey Cedars* v. *Pelham,* 9 *N. J. Mis. R.* 196; *affirmed,* 108 *N. J. L.* 553; *Y. M. C. A.* v. *Orange,* 3 *N. J. Mis. R.* 404. Are these cases controlling?

In the Westervelt case the claimant was a fraternal organization which performed no duty essentially public, and, therefore, was denied exemption.

In the Orange K. of C. Holding Co. case, although part of the building was used for the moral and mental improvement of men, women, and children, and for religious and charitable work, claimant in fact used the building largely for commercial enterprises in open competition with like businesses in the community. In the latter circumstance the fact that the business was operated at a loss is of no moment. Exemption was denied.

In the Y. M. C. A. of Harvey Cedars case, one large main building and some small out buildings located on a seven-acre tract were used as a summer home for working girls. A weekly charge of $13 was made for each girl. The income was not sufficient to pay expenses, and the deficit was made up by voluntary contributions. It was held that the claimant was entitled to exemption (to the extent of only five acres, as limited by the statute) because to such extent the use was for the mental and moral uplift of persons through recreational and religious methods. This holding would appear, if anything, to support appellant's claim.

In the case of Y. M. C. A. v. Orange, the building was not in use; it was, in fact, incomplete at the time of the assessment.

Clearly, these cases are distinguishable upon the facts, and therefore, are not controlling.

*Fourth:* Bearing in mind that a grant of exemption from

taxation is in the nature of a renunciation of sovereignty; that it is most strictly construed against the grantee; that it is never extended beyond the clearly required terms of the concession, and that in case of doubt, the determination is based upon the rule which subjects all property to a just share of the public burden (*Mausoleum Builders of New Jersey* v. *State Board of Taxes,* 88 *N. J. L.* 592; *affirmed,* 90 *Id.* 163), and, further bearing in mind, that to merit exemption under the act, the burden is upon the claimant to adduce proofs within the provisions of the act granting exemption (*Princeton, &c., School* v. *State Board of Taxation,* 113 *Id.* 515, 517), let us recur to the provision of *Rev. Stat.* 54:4-3.6, granting exemption, in order to ascertain whether the legislature by using the words "all buildings actually and exclusively used in the work of the associations \* \* \*" intended the construction given thereto by the majority holding.

It is the settled law that legislation which grants exemption from the burden of taxation is supported upon the theory that the grant is due as a *quid pro quo,* for the performance of services essentially public, and which the taxing sovereignty is relieved, *pro tanto,* from performing. *Carteret Academy* v. *State Board, &c.,* 102 *N. J. L.* 525; *affirmed,* 104 *Id.* 165; *Princeton, &c., School* v. *State Board, &c., supra* (at *p.* 520).

It is undisputed that each one of the other associations using appellant's property and facilities is either an educational, charitable, religious or beneficial association within the purview of the act. Thus, if each of the associations had exclusively conducted one or more of its chartered objectives outside of appellant's property, and upon property which each owned, the property of each would have been entitled to exemption from taxation. But, according to the effect of the majority holding, because appellant permitted these other associations to use its building and facilities, although rent free, in order to carry on their work, which work was co-operative with and supplemental to appellant's work, appellant's property is not entitled to exemption from taxation. Otherwise stated, this holding means that the property of two

or more associations engaged in activities prescribed under the act is exempt from taxation so long as each association remains in a separate building but if the same associations join their activities in one building in order to better accomplish their chartered objectives, that building is not entitled to exemption even if the use so made thereof is in line with and harmonizes with the work and the use to which it is put by the owner thereof. I do not so construe the act.

I perceive in the act a clear legislative determination to remedy the mischief resulting from abuses of the right to the grant of exemptions from taxation. To effect that remedy the legislature specifically set down the terms and conditions under which certain property should be exempt from taxation. These terms and conditions, therefore, are the *sine qua non* to the right of exemption. Epitomized, I read them to mean that the claimed property must be actually and exclusively used for the purposes prescribed under the act; it must not and cannot be used for any purpose alien thereto.

Now does the fact that other associations, as here were permitted to use the excess space and facilities of appellant's property in furtherance of the actual and exclusive use made thereof by appellant, in anywise circumvent or abuse the right to the grant of exemption which appellant's property otherwise rightfully enjoyed under the act? I do not think so.

For again I glean from that act a definite legislative policy, a clear legislative intent to limit the grant of exemption from taxation to such *property* as is actually and exclusively used, under the control of the owner thereof, for one or more of the permissive purposes under the act.

From this construction it necessarily follows that the test as to whether property is exempt from the burdens of taxation is not that the property must be actually and exclusively used *only* by the *owner* thereof, but rather is the test that the *property*—under the control of the owner, must be actually and exclusively used *only* for one or more of the permissive purposes under the act. Under this test the concentration of the work of all the associations, as here, in the one building, clearly enures to the benefit rather than to the detriment of

taxing authority. It reduces the number of properties that would otherwise be entitled to exemption from taxation.

I am of the opinion that appellant's property should under the proofs of the case at bar, be exempt from taxation. Accordingly, I vote to reverse. Judge Hetfield, Judge Dear, Judge WolfsKeil and Judge Rafferty concur in this opinion.

*For affirmance*—THE CHANCELLOR, CASE, BODINE, DONGES, HEHER, PORTER, WELLS, WALKER, JJ. 8.

*For reversal*—PERSKIE, HETFIELD, DEAR, WOLFSKEIL, RAFFERTY, JJ. 5.