LASSER, P.J.T.C.
The issue in this case is whether property owned by Church Contribution Trust (CCT), located at 475 Bernardsville Road and designated as Block 18, Lot 12 on the tax map of the *301 Borough of Mendham, is exempt from local property taxation for the year 1985 as property actually and exclusively used for the moral and mental improvement of men, women and children, or for charitable purposes, pursuant to N.J.S.A. 54:4-3.6. No claim is made for exemption for religious or school use. CCT has appealed from the denial of exemption by the Morris County Board of Taxation. The property was assessed for 1985 at:
Land $205,400
Improvements 396,700
Total $602,100
Valuation is not in issue.
I.

The Facts.

CCT is organized under the laws of New Jersey as a Title 15, nonprofit corporation, for the purpose of providing funds for charitable, scientific, literary or educational organizations in the United States which qualify as tax-exempt organizations under federal income tax laws and regulations. CCT is qualified as a tax-exempt religious and charitable organization under § 501(c)(3) of the Internal Revenue Code and applicable New Jersey law.
The subject property consists of a mansion, a caretaker’s cottage, a chapel and accessory buildings situated on 33.467 acres.[1] Taxpayer claims exemption for the mansion and five acres of land and the chapel and a reasonable amount of land surrounding it. No evidence was submitted from which I can conclude that the chapel or the accessory buildings were in use on the assessing date for the exempt purposes claimed. Therefore, the sole issue is the exemption of the mansion and five acres of land.
*302 Three entities rent portions of the mansion. They are the Wise Old Owl Preschool (WOOPS), The Association of Psytheosynthesis (TAP) and the Mendham Child Development Center (MCDC). Other portions of the mansion are occupied by two caretakers and their families, rent free.
WOOPS is an entity affiliated with CCT. It is a nursery preschool licensed by the State of New Jersey. The school keeps its tuition lower than other preschools in Morris County, in order to enable children to attend who could not otherwise afford to do so. No child is denied admission because of inability to pay.
WOOPS paid rent of $2,300 in 1983 and $3,400 in 1984, for four rooms in the basement of the mansion, comparatively low rents for Morris County. In 1983 and 1984, WOOPS paid its teachers annual salaries of $2,250, which is less than salaries paid to teachers at comparable Morris County preschools. In 1983 WOOPS had income of $12,936.32 and expenses of $12,-511.98, and in 1984 had income of $13,082.85 and expenses of $13,985.55. The operating surplus in 1983 was applied to the 1984 budget.
TAP is an entity affiliated with the Mendham, New Jersey Charitable Religious Trust (MNJCRT).[2] TAP provides individual and group counseling based on biblical principles, and serves as a resource for local churches, pastors, Christian layworkers and others. It operates its counseling office on the subject property. TAP also holds workshops to instruct individuals and area ministers in its counseling methods.
TAP provides counseling services for individuals with a wide variety of personal problems. TAP describes its counseling as a combination of psychology, theology and philosophy, and offers it as an alternative to conventional psychological counseling. The counseling includes family and marital counseling, *303 sessions on single parenting and spiritual and financial advice. TAP advertises in the telephone company’s yellow pages under “Psychologists” and “Marriage Counselors.” In addition, area ministers refer individuals with spiritual problems, eating disorders, low self-esteem, suicidal tendencies, sexual difficulties, depression and other unspecified emotional and psychological problems.
TAP employed two counselors in 1984, Dr. Clinton H. Rutherford, the Director of TAP and a Trustee of CCT and MNJCRT, and Dr. Wanda Morgan. Dr. Rutherford is an ordained minister with a Ph.D. in psychology.[3] He charges his clients $50 an hour, on a sliding scale downward, for counseling sessions. Dr. Rutherford testified that he does not insist on payment and that it is up to the clients to determine how much they will pay for his services. He bills some clients for medical insurance purposes.
Dr. Morgan is licensed in New Jersey as a psychologist, and she works at TAP part-time. She bills patients $60 an hour, on a sliding scale downward, for counseling sessions. She gives 40% of her fees to TAP and keeps 60%, which is denominated as salary. Dr. Rutherford testified that Dr. Morgan normally sends bills to a client twice, and if payment is not received, does not pursue payment further.
In 1983, TAP provided counselling to 230 clients who paid for services as follows:
*304 Payment structure Number of clients
Paid no fee 80 (35%)
Paid one-half or less than full fee 68 (29.5%)
Paid less than full fee but more than one-half 36 (15.5%)
Paid full fee 46 (20%)
230 (100%)
Dr. Rutherford’s billings for 1983 and 1984 were:
1983 1984
Hours 1,245 1,838
Billing rate $50/hour $50/hour
Fees billed $62,250 $91,900
Fees collected $32,079 $27,126
Fees uncollected $30,171 $64,774
TAP rented 18 rooms in the mansion, paying rents totaling $17,353 in 1983 and $14,697.25 in 1984. In 1983 MNJCRT and TAP collected $32,079 in counseling fees, had a total income of $79,308.05[4] and expenses of $81,075.98, for a deficit of $1,767.04, and in 1984 collected $30,557.50 in counseling fees, had total income of $43,084.90 and expenses of $67,587.43, for a deficit of $24,502.53. The deficits were offset by the sale of assets of MNJCRT.
The Mendham Child Development Center is a Title 15, nonprofit corporation which provides low cost, and occasionally *305 free, services for nursery schools, family therapy, counseling for parents with child abuse problems, and services for children with developmental problems and learning disabilities. It has been certified by the New Jersey Department of Education as a child study team and works closely with the Morris County Division of Youth and Family Services (DYFS). MCDC is organized exclusively for charitable, religious, educational and scientific purposes, and is currently in the process of applying for a determination of tax-exempt status pursuant to § 501(c)(3) of the Internal Revenue Code and under applicable New Jersey law. It is the only child development center in Morris County.
MCDC rented two rooms in the mansion and paid rents totaling $5,343.77 in 1983 and $5,700 in 1984 directly to TAP. MCDC has no paid employees but retains the services of seven licensed medical, psychiatric and other health and developmental professionals who act as consultants and are called upon when their particular skills are required.
The principal services provided by MCDC are diagnostic and therapeutic for children with developmental and psychological problems. MCDC consultants perform diagnostic evaluations on children to determine the nature of the disability. These evaluations involve a series of individual tests which are performed by the different consultants of the child study team. Some children do not require all of the tests. The type of test, number performed and the 1984 fee for each follow:
*306 Test[5] Fee No. performed
Psychological $200 16
Educational 125 3
Speech and language 125 1
Social interaction 60 2
Psychiatric 60 2
Neurological 150 1
Each consultant prepares a report, and then a course of treatment, if required, is recommended for the child.
MCDC provides family and child therapy. In 1984, 208 therapy sessions were conducted, most of which were psychological and play therapy. The center charges $60 for a 45-min-ute therapy session. Dr. Beverly Tignor, President of MCDC, testified that fees for therapy and evaluation are low compared to those of other facilities providing these services. Some patients do not pay for services, and in some cases, the center lowers its fee where there is an inability to pay. DYFS paid for many of the patients who were unable to pay. MCDC has never refused to work with a client because of the client’s inability to pay.
All fees for services are charged and collected by the individual consultants providing the services. The consultants remit 10% of their fees to MCDC to pay the rent. Dr. Tignor pays all of the other expenses. MCDC has a strict policy which prohibits consultants from obtaining new patients through the center. On occasion, a consultant will refer a private patient to the center.
MCDC also conducts research on the development of young children and babies. The research is completely separate from the diagnostic and therapy operations.
*307 II.

Discussion.

N.J.S.A. 54:4-3.6 provides in pertinent part:
The following property shall be exempt from taxation under this chapter____all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, or for ... charitable purposes ... the land whereon any of the buildings hereinbefore mentioned are erected and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent ... provided, in case of all the foregoing the buildings, or lands upon which they stand ... are not conducted for profit____
The requirements for the claimed exemptions are: (1) the owner of the property must be organized exclusively for the moral and mental improvement of men, women and children, or for charitable purposes, (2) the property must be actually and exclusively used for the tax-exempt purposes,[6] and (3) the operation and use of the property must not be for profit. Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 506, 472 A.2d 517 (1984); Christian Research Institute v. Dover, 5 N.J.Tax 376, 382 (Tax Ct.1983).
The actual use to which the property is devoted is the essential consideration in matters of tax exemption. Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 89-90, 118 A.2d 809 (1955). Taxpayer contends that WOOPS, TAP and MCDC use the property actually and exclusively for the moral and mental improvement of men, women and children, or for charitable purposes. Tax exemption statutes are to be strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation. Consequently, CCT has the burden of proving that the three organizations use the property exclusively for tax-ex *308 empt purposes. Princeton Univ. Press v. Princeton Boro., 35 N.J. 209, 172 A.2d 420 (1961).
A.

Moral And Mental Improvement.

There is no definition in the statute or its legislative history of the term “moral and mental improvement” to serve as a definitive guide to its interpretation. Paper Mill Playhouse, supra, 95 N.J. at 512-513, 472 A.2d 517. The moral and mental improvement classification has been applied to various public and civic organizations which directly serve the public by contributing to the educational, cultural and spiritual development of society in general.
Organizations such as the YMCA and YMHA traditionally have been recognized as being within this classification. Trustees of Young Men’s, etc. v. State Board Tax Appeals, 119 N.J.L. 504, 197 A. 372 (Sup.Ct.1938), aff'd 121 N.J.L. 65, 1 A.2d 367 (E. & A.1938); YMCA, Ridgewood v. State Board Tax Appeals, 117 N.J.L. 196, 186 A. 700 (Sup.Ct.1936).[7] The activities of these organizations involve physical training, recreation and instruction in citizenship. YMCA, supra, 117 N.J.L. at 198, 186 A. 700. Boys’ Club of Clifton, Inc. v. Tp. of Jefferson, 72 N.J. 389, 404, 371 A.2d 22 (1977), is a recent example of the application of the moral and mental improvement exemption to youth organizations.
In Elizabeth v. Bayway Community Center, 19 N.J.Misc. 263, 18 A.2d 558 (Bd. of Tax Appeals 1941), a community center was found by the court to be an entity organized for the moral and mental improvement of men, women and children based on its contributions to the community. The court found that:
*309 Respondent is an incorporated organization formed for purposes of charity, and the moral and mental improvement of adults and children residing in what is known as the Bayway section of the City of Elizabeth. The proof shows abundant fulfillment of those purposes, in a literal sense. The buildings and land under appeal ... are exclusively used to house a veritable multitude of activities, too numerous to recount here in detail, charitable, social and educational in nature, for the benefit of thousands of working class families in the neighborhood of the property, at little or no cost whatever to such persons. [ 19 N.J.Misc. at 263, 18 A.2d at 558]
The moral and mental improvement exemption has been applied to nonprofit organizations which directly serve the general public by promoting, making available and distributing scholarly and scientific materials and information to the general public. In Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 221 A.2d 15 (1966), the Court held that a professional organization of physicians and dentists which operated a medical library open to the public, and sponsored symposia on medical issues usually attended by the general public, was organized for the moral and mental improvement of men, women and children.
In Princeton Univ. Press v. Princeton Boro., supra, the Court held that a nonprofit printing and publishing plant affiliated with Princeton University which published outstanding scholarly works was organized for the moral and mental improvement of men, women and children. Its publication of these works, which would normally not earn a sufficient return to merit publication by commercial publishers was deemed by the Court to be “a valuable public service.” 35 N.J. at 216, 172 A.2d 420. The press was denied exemption, however, because the balance of its activities, commercial printing performed to offset losses incurred in publishing the scholarly works, was found to be non-tax-exempt use of the property.
In Paper Mill Playhouse, supra, the Court applied the moral and mental improvement exemption to a nonprofit corporation which operated a theater and produced live theatrical and cultural productions. The Court stated:
[D]espite our uncertainty about the classification boundaries, we have no doubt that Paper Mill’s stated purpose, i.e., to promote “a greater interest in and appreciation of art, music, drama, history, literature, education and the theater *** by the presentation of concerts, drama, ballet and musical performances” is *310 for the moral and mental improvement of men, women and children. [ 95 N.J. at 514, 472 A.2d 517],
Other theater groups had been found exempt under the moral and mental improvement exemption in Chester Theatre Group v. Chester, 115 N.J.Super. 360, 279 A.2d 878 (App.Div.1971), and New Brunswick v. George St. Playhouse, Inc., 2 N.J.Tax 407 (Tax Ct.1981). These cases involved community groups which used theaters exclusively to present musical and dramatic productions, concerts, workshops and children’s programs.
In Schizophrenia Found, of N.J. v. Montgomery Tp., 6 N.J.Tax 594 (Tax Ct.1984), the court considered whether property used as a clinic and a pharmacy by a foundation organized to provide research and community assistance in connection with persons who suffer mental disorders was exempt under the moral and mental improvement exemption. The court found that the foundation was organized for the moral and mental improvement of men, women and children because its purpose, as set forth both in its certificate of incorporation and its bylaws, included (1) the organization of social and information clubs dealing with schizophrenia, (2) publication and circulation of books and other publications to disseminate news and information about schizophrenia, and (3) work with hospitals. However, because the clinic was operated similarly to a private practice of medical professionals, receiving fees and treating patients on an individual basis, and because the pharmacy was commercial in nature, the court found that the property was not actually and exclusively used for the moral and mental improvement of men, women and children.
A review of real property case law in other jurisdictions indicates that New York has been the only other state in which the exemption for organizations whose purpose is the moral and mental improvement of men, women and children has been litigated. There is an indication in the legislative history of the New York statute that this exemption also was designed to benefit organizations such as the YMCA, YWCA, Boy Scouts and Girl Scouts. Presbyterian Residence Center Corporation v. Wagner, 66 A.D.2d 998, 411 N.Y.S.2d 765, 767 (App.Div. *311 1978). However, the courts have found that other organizations whose work is for the public good and whose programs and activities are open to the general public are within the moral and mental improvement exemption. Symphony Space, Inc. v. Tishelman, 60 N.Y.2d 33, 466 N.Y.S.2d 677, 453 N.E.2d 1094 (N.Y.1983).
The New York courts have held that organizations whose activities do not involve the general public but which provide indirect public benefit are not exempt under the moral and mental improvement exemption. In Delancey St. Found. v. Bd. of Assess. Rev., 112 A.D.2d 132, 491 N.Y.S.2d 381 (App.Div. 1985), the court held that an alcohol and rehabilitation center was not exempt. The court found that, while the work of the center was both admirable and laudatory, “it [did] not appear to be the type of general public service for which the ‘moral and mental improvement’ exemption was included.” Id. 491 N.Y.S. 2d at 382. See also Presbyterian Residence Center Corporation v. Wagner, supra, (nonprofit apartment complex for senior citizens); Swedenborg Foundation, Inc. v. Lewisohn, 40 N.Y.2d 87, 386 N.Y.S.2d 54, 351 N.E.2d 702 (Ct. of App.1976) (foundation organized to disseminate the writings and views of a philosopher); and Matter of Association of Bar of City of N.Y. v. Lewisohn, 34 N.Y.2d 143, 356 N.Y.S.2d 555, 313 N.E.2d 30 (Ct. of App.1974) (a bar association and an explorers’ club).
The courts in both New Jersey and New York have limited the moral and mental improvement exemption to organizations which directly benefit the general public by providing educational, cultural or civic programs. Organizations established to render professional services to individuals, such as counseling and therapy, although they may indirectly benefit the public, have not been found exempt. Schizophrenia, supra; Delancey St. Found., supra.
The primary activity of TAP and MCDC is individual counseling. TAP is a resource for individuals who seek a particular type of counseling or therapy. It is an alternative to private practitioners who provide psychological and psychiatric *312 services. MCDC provides important services for children with psychological problems, but these services are merely alternatives to individualized services provided by private practitioners. Dr. Tignor testified that MCDC’s fees are comparatively low and that the only difference between MCDC and a private, profit-making medical practice is that MCDC charges less for its services.
TAP and MCDC provide some measure of community service. TAP holds workshops and meetings for area ministers and lay people. MCDC conducts programs for schools and teachers in Morris County. However, the statute in effect for the 1985 tax year requires exclusive use of the property for exempt purposes, Princeton Press, supra; Schizophrenia, supra. Use of the property for individual counseling does not directly serve a public purpose and therefore is not actual and exclusive use of the property for the moral and mental improvement of men, women and children.
B.

Charitable Purpose.

The term “charitable purpose” has been defined as a purpose “beneficial to the community,” Leeds v. Harrison, 9 N.J. 202, 87 A.2d 713 (1952), and as “relief to indigent persons,” Passaic United Hebrew Burial Assoc. v. United States, 216 F.Supp. 500 (D.N.J.1963). The term “charitable purposes” was discussed in Presbyterian Homes v. Div. of Tax Appeals, 55 N.J. 275, 261 A.2d 143 (1970), in which the Court reviewed the definition given the term “charitable” by courts in other states. The Court concluded that the term was incapable of precise definition and stated:
... the determination of whether property is devoted to charitable purposes depends upon the facts or circumstances of each case. As a guide, however, it should be borne in mind that a sometimes stated justification for charitable tax exemptions is that if the charitable work were not being done by a private party, it would have to be done at public expense. [Id. at 285, 261 A.2d 143]
The standard for whether a treatment facility operates as a charitable institution was set forth in Catholic Charities of the *313 Diocese of Camden v. Pleasantville, 109 N.J.Super. 475, 263 A.2d 803 (App.Div.1970), in which the court considered whether a nursing home was a charity entitled to exemption. The nursing home in question admitted mostly welfare patients (80 out of 106 beds were filled by welfare patients) and actively sought to admit economically disadvantaged individuals. The court concluded that the nursing home did not operate like a commercial facility and was, in fact, a charity.
In the subject case, both TAP and MCDC received fees for their services. Taxpayer has demonstrated that TAP has very lenient billing practices and does not pursue payment. The facts indicate, however, that TAP does have hourly rates of $50 to $60 and that one of its counselors bills every patient. TAP does not primarily seek patients who cannot afford to pay for services.
MCDC receives fees for most of its services. It was not organized primarily to provide services for those who could not afford to pay. Dr. Tignor testified that MCDC charges comparatively lower fees than other facilities providing similar services. However, the individual consultants retain 90% of the fees collected, and their association with MCDC is not very different from a private association of physicians and health professionals.
Taxpayer stresses that TAP and MCDC are nonprofit organizations. The fact that a corporation is organized under Title 15 instead of Title 14 does not entitle it to exemption from real property taxation under N.J.S.A. 54:4-3.6 unless it is exclusively organized and used for the tax-exempt purpose stated therein. Taxpayer argues that, since TAP and MCDC charge lower fees for individuals who cannot afford their services, they operate for charitable purposes. TAP and MCDC render professional services and are alternatives to private practitioners who provide similar services. Lowering fees or not pursuing payment from some individuals does not establish charitable purpose. To qualify as a charity, an entity must seek to provide services primarily for indigents and those who *314 are unable to pay for services. Catholic Charities, supra. This distinguishes charities from private practitioners who may occasionally lower their rates.
The counseling activities of TAP and MCDC are not conducted for the moral and mental improvement of men, women and children, as this term has been defined by our courts, and TAP and MCDC are not charities. I therefore conclude that TAP and MCDC do not use the subject property exclusively for exempt purposes. In view of the foregoing, it is not necessary for me to make a finding with respect to WOOPS.
The Clerk of the Tax Court is directed to enter judgment affirming the Morris County Board of Taxation’s denial of exemption for the 1985 tax year.

The mansion is described in the exemption application as having 65 rooms. A stipulation of facts, in evidence, lists 114 rooms, some of which are delineated as closets and bathrooms.

MNJCRT is qualified as a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code and applicable New Jersey law. TAP was the only operation funded by MNJCRT in 1983 and 1984.

Dr. Rutherford is not licensed in New Jersey as a counselor because the State does not require clergy to obtain licenses.

In 1983 TAP received $33,542.71 from a caterer which operated in the mansion during that year.

The psychological, educational and some of the speech and language testing was conducted on the subject property. The other tests were performed by the MCDC consultants at other locations.

N.J.S.A. 54:4-3.6 was amended by L.1985, c. 395, § 1, which deleted the "exclusive use” requirement for the moral and mental exemption. The amendment became effective for the 1986 tax year. The subject case is limited to the 1985 tax year.

These decisions apply the moral and mental improvement exemption and not the specific exemption for these organizations. YM- and YWCA and YM- and'YWHA organizations were specifically exempted from taxation in 1936, and a 1959 amendment extended the exemption to the Boy Scouts and Girl Scouts. N.J.S.A. 54:4-3.24.