DOUGHERTY, J.T.C.
The Issues: The issues for decision are: (i) is taxpayer a corporation organized and conducted for a purpose(s) entitling it to an exemption from real property taxation as provided under N.J.S.A. 54:4-3.6; and if it is, (ii) is taxpayer’s use of certain structures exclusively for the accomplishment of such purposed).
The Facts: Fountain House of New Jersey, Inc. (taxpayer) is a corporation organized under the provisions of Title 15 of the New Jersey Revised Statutes of 1937.[1] Taxpayer owns a parcel of real property located at South Side, Mountain Road in the Township of Montague, Sussex County (the municipality) which is designated as Lot 20, Block 19 on the municipality’s tax maps (the subject property), acquired by devise under the will of a former member of its board of trustees. Taxpayer conducts all of its activities at the subject property.
The subject property consists of approximately 484 acres[2] of land and contains certain improvements including a large residence referred to as the Chalet, a smaller caretaker’s residence *391 and a collection of farm use structures. The farm use structures (the outbuildings) include a barn/garage, a tool shed, chicken coops and similar buildings.
The subject property was assessed for tax year 1992 as follows:
A. 475 acres of land received farmland assessment pursuant to the Farmland Assessment Act of 1964, L. 1964, c. 48 (N.J.S.A. 54:4-23.1 et seq.);
B. the outbuildings:
Land $ 0
Improvements 40,000
Total $ 40,000; and
C. The remainder of the improvements together with the balance of the acreage surrounding such remaining improvements apparently were determined by the municipal tax assessor to be exempt from taxation pursuant to N.J.S.A 54:4-3.6. It appears that the outbuildings are located upon lands exempt from taxation by virtue of other structures also located thereon, which enjoy such status under N.J.S.A 54:4-3.6.
Taxpayer appealed the 1992 assessment of the outbuildings to the Sussex County Board of Taxation, which affirmed the assessment by judgment entered June 25, 1992 with the explanation “[T]his assessment is for Farm Buildings-Not Exempt.” The within appeal followed. The narrow issue before the court is whether the outbuildings are entitled to an exemption under N.J.SA 54:4-3.6 as being actually utilized by taxpayer in activities in pursuit and furtherance of a purpose and function of taxpayer sufficient to support a charitable exemption. Neither the amount of the $40,000 assessment of the outbuildings nor the assessment of the balance of the subject property is in dispute.
Taxpayer’s certificate of incorporation filed in the office of the Secretary of State of New Jersey on January 30, 1969, provides that the corporation is organized for the following purposes:
SECOND: ... to help rehabilitate discharged mental patients, to provide and maintain grounds and premises for their social and vocational rehabilitation; to provide and maintain a clubhouse and meeting place for them; to prepare them for *392 self support; to assist in building morale; to render this assistance voluntarily; and to do any and all things necessary or proper in connection with or incidental to any of the foregoing.
Taxpayer operates in conjunction with Fountain House, Inc.,[3] a corporation organized in or about 1948-1949, under the laws of the State of New York (Fountain House—NY). This corporation’s main facility is located in New York City where it operates-programs for the assistance of the discharged mental patients. Fountain House—NY offers a day program focusing on vocational training and evening/weekend and holiday programs focusing on socialization, recreation and support of such patients. It has a daily population of 400 and a monthly population of 800 patients, who are referred to as “members.” These discharged mental patients have suffered from serious and persistent mental illnesses.
Small groups of members are bussed from Fountain House— NY to the subject property with staff members on a regular basis. The groups average 13 in total, including both members and staff. Each group stays at the subject property for approximately three days and two nights. During these stays, the members perform numerous tasks in the outbuildings and on the subject property. Such tasks include: collecting and cleaning eggs for consumption and sale on the subject property and at the Fountain House—NY facility; cleaning chicken coops and stalls of livestock; collecting, splitting and stacking of firewood; planting and tending flower beds; care and feeding of animals; trailblazing activities including marking of trails and identification of birds and trees; equipment maintenance; snow removal from and repairs to roads on the subject property; repair of split rail fences and wooden bridges; resanding and redecorating of the Chalet; installing storm windows and screens in the Chalet; harvesting and bailing of hay; planting and tending of % acre vegetable garden; and mowing, fertilizing and raking of the extensive lawns. Special projects *393 undertaken by the members include the building of a “deer fence” around a certain portion of the subject property and the digging of trenches for irrigation systems and electrical lines. All activities are assigned and discussed with the farm manager. No activities other then these described tasks are provided for the members during their stays. The Fountain House—NY members constitute the entire population of discharged mental patients visiting the subject property.
Under an agreement with Fountain House—NY, no fee is paid by it to taxpayer for the use by its members.
The testimony of taxpayer’s program director was that Fountain House—NY followed the “club house method” of rehabilitation. The purpose of this method was said to be to prepare members to enter or re-enter society in various levels in accordance with their abilities by working and developing workskills; and to provide as normalized an experience as possible for the purpose of integrating or reintegrating members into society. Taxpayer’s program director testified that the tasks undertaken on the subject property and within the outbuildings were an essential part of the rehabilitation process engendering in the members “feelings of accomplishment and enjoyment.”
Taxpayer offered no expert testimony or other competent evidence with respect to the design of the vocational and rehabilitation program allegedly pursued by it or by Fountain House—NY, nor to explain how the accomplishment of the maintenance and farm tasks by the members on the subject property would form a part of such therapeutic program. Nor was testimony offered to explain how the relatively small percentage of members who actually visit the subject property were selected from Fountain House—NTs approximate 800-person monthly population.[4] It is noted that the visits by members continued on a day trip basis to *394 tend the gardens and perform other necessary tasks during several periods when the Chalet was unavailable to provide sleeping accommodations.
The subject property and outbuildings are not used solely by the members and staff of Fountain House—NY, but are available to some 13 groups from throughout the State of New Jersey and to professional groups from across the country. Taxpayer offered no evidence as to the identity of any of these organizations, the charges to them for the use of the facilities, or the character of the programs conducted by them.[5] Taxpayer asserts that no profit is made from these uses, although the users may be required to pay taxpayer a fee for their use. All visitors are expected to participate in the same tasks and activities as the Fountain House—NY members.
Taxpayer’s farmland activity, which relates to approximately 98% of the total acreage of the subject property, is described in taxpayer’s further statement filed for tax year 1992. That statement indicates that “(t)his 473 acres includes 1 acre of harvested cropland, 12 acres of permanent pasture and 460 acres of woodland devoted to agricultural use____ The land is actively used in the operation of dairy farming, poultry raising, lumbering and haying. Annual receipts of approximately $4,439.28 are derived from these operations.”[6]
*395 Taxpayer claims that the outbuildings qualify for exemption under either of the following provisions of N.J.S.A. 54:4-3.6: (i) as “buddings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children” (the moral improvement purpose) or (ii) as “buildings owned by a corporation created under or otherwise subject to the provisions of Title 15 of the Revised Statutes or Title 15A of the New Jersey Statutes and actually and exclusively used in the work of one or more associations or corporations organized exclusively for charitable ... purposes” (the charitable support purpose).
The municipality argues that taxpayer has failed to demonstrate that it is actively pursuing a program of rehabilitating discharged mental patients and accordingly fails to meet the requirement that it be organized exclusively for an exempt purpose. It continues, that the taxpayer likewise has failed to meet the exclusive use test of N.J.S.A. 54:4-3.6 since the outbuildings (the assessment of which is in question) were used predominantly in the taxpayer’s farmland activities.

The Law:

N.J.S.A 54:4-3.6 provides, as to the moral improvement purpose:
The following property shall be exempt from taxation under this chapter: ... all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt____
N.J.S.A 54:4-3.6 provides an exemption for buildings used for what has been labelled herein as a charitable support purpose as follows:
—all buildings owned by a corporation created under or otherwise subject to the provisions of Title 15 of the Revised Statutes or Title 15A of the New Jersey Statutes and actually and exclusively used in the work of one or more associations *396 or corporations organized exclusively for charitable or religious purposes, which associations or corporations may or may not pay rent for the use of the premises or the portions of the premises used by them____
The statute continues, with respect to all of its enumerated purposes collectively:
—provided, in case of all the foregoing, the buildings or the lands on which they stand, or the associations, coiporations or institutions using and occupying them as aforesaid, are not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious purposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided, the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes. The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed----
Under either purpose this court must be guided by the general principles set out in Princeton University Press v. Princeton Bor., 35 N.J. 209, 172 A.2d 420 (1961):
The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation---- Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption (citations omitted). The burden of proving a tax-exempt status is upon the claimant ...
[at 214; citations omitted];
and Delta Upsilon Fraternity v. New Brunswick, 129 N.J.L. 238, 28 A.2d 759 (Sup.Ct.1942):
The existence of grounds for exemption is a mixed question of law and fact. For obvious reasons, exemptions from taxation are not favored, and so are strictly construed. Such renunciation of sovereignty is sustainable only-on grounds of public policy, ie., the service of an interest fundamentally public and not private. Exemptions not so grounded place an unequal and unjustifiable burden upon property taxed for the operation of government in the common interest. Apart from the criteria laid down in the statute, unless the exemption is founded on a “quid pro quo for the performance of a service essentially public, and which the state thereby is relieved pro tanto from the necessity of performing,” it constitutes a “gift of public funds at the expense of the taxpayer,” and is “indefensible both under our public policy of equal taxation and our constitutional safeguard against illegal taxation.” Carteret Academy v. State Board of Taxes and Assessment, 102 N.J.L. 525, 133 A. 886 (Sup.Ct.1926), aff'd, 104 N.J.L. 165, 138 A. 919 (E. & A.1927). Equality is the basic principle of taxation, and a valid exemption therefrom must needs serve the common interest in substantial particulars.
*397 [ 35 N.J. at 240, 172 A.2d 420; citations omitted].

The Moral Improvement Purpose.

(a) The Organization Test.

Real property may be owned by an individual, two or more individuals or by an entity recognized under New Jersey law. In general, when title to real property is taken in an entity, the entity may be a corporation, a partnership, an estate or a trust. The exemption which taxpayer seeks under the moral improvement purpose requires that taxpayer be, first and foremost, an association or corporation.[7] The exemption will not flow to any other entity. Taxpayer is a corporation.
N.J.S.A 54:4-3.6 further requires that the corporation be “organized exclusively for the moral and mental improvement of men, women and children.” There is no definition in either the statute or its legislative history of the phrase “organized exclusively.”
In the Tax Court opinion in Intercare Health Sys. v. Cedar Grove Tp., 11 N.J.Tax 423 (Tax 1990), aff'd, 12 N.J.Tax 273 (App.Div.1991), the court examined the meaning of “organized exclusively” in the context of a N.J.S.A. 54:4-3.6 hospital purpose. The Intercare taxpayer was a subsidiary whose parent was authorized by its corporate charter to provide total health care services, including the operation of hospitals, nursing homes and similar care facilities. Taxpayer’s parent owned several other subsidiary corporations, one of which owned and operated a hospital. The *398 taxpayer’s purposes under its restated certificate of incorporation were “the establishment, creation, ownership and operation of ‘such nursing, convalescent and rest homes and allied activities for the care of the sick, injured, disabled and aged as the Board of Trustees may, from time to time deem appropriate.’ ” 11 N.J.Tax at 425. Taxpayer asserted that its sibling relationship with a hospital, together with the various servicing agreements it had with its sibling and other hospitals, permitted it to qualify as being “organized exclusively” for hospital purposes. The court held that the “test is whether (the taxpayer’s) operation was sufficiently integrated with a hospital so that its building’s use was an integral part of operating a functioning hospital.” 11 N.J.Tax at 431. After examination of the taxpayer’s activities and operation it was held that as taxpayer did not function as an authorized hospital, nor were its activities integrated into an operating hospital, it was not “organized exclusively” for hospital purposes.
In affirming the Intercare Tax Court opinion, the Appellate Division found that the taxpayer and its corporate parent:
—contend that their nursing and convalescent home is entitled to the tax exemption because it is operated for the benefit of local hospitals, enabling those hospitals to relocate patients who no longer need acute nursing care. The Tax Court, Judge John J. Hopkins, J.T.C. rejected this contention____in which it held, among other things, that for property to be entitled to a tax exemption for hospital purposes, the operation of the property owner must be “sufficiently integrated with a hospital so that its building’s use was an integral part of operating a functioning hospital.’ (citation omitted) The undisputed facts of this case establish that ... [taxpayer] and [its corporate parent] failed to meet that prerequisite for a tax exemption. The building for which they sought a tax exemption is not an integral part of a functioning hospital.
[ 12 N.J.Tax at 274-75],
The Intercare Appellate Division opinion continued its affirmance of the result reached by the Tax Court for a second reason as follows:
Furthermore, according to [taxpayer’s] certificate of incorporation, it was incorporated “to create a private corporation to construct or to acquire a housing project or projects, nursing home or homes, and to operate the same.” Its stated corporate purposes do not include operating a hospital. Therefore, [taxpayer] fails to satisfy the statutory requirement that the corporation claiming the exemption must have been incorporated for hospital purposes.
*399 [Id. at 275][8]
In Paper Mill Play House v. Millburn Tp., 95 N.J. 503, 472 A.2d 517 (1984), the Supreme Court set out the tests requisite to entitlement to a N.J.S.A. 54:4-3.6 exemption based upon a moral improvement purpose. The issue there with respect to the organization test was whether the taxpayer’s activities were of such character as to constitute a moral and mental improvement purpose. In holding that taxpayer met the test the Court said:
We do not attempt to enumerate all the theatrical activities that might fall within the ambit of moral and mental improvement. Nevertheless, despite our uncertainty about the classification’s boundaries, we have no doubt that Paper Mill’s stated purpose ... is for the moral and mental improvement of men, women and children.
[Id. at 513-14, 472 A.2d 517]
That case is distinguishable from the present case. In the within matter the municipality does not assert that taxpayer’s stated purpose fails to constitute an exempt purpose under the statute, but argues that taxpayer’s activities are not in furtherance of its stated purpose.
N.J. Const. art. VIII, § 1, ¶ 2. provides:
Exemption from taxation may be granted only by general laws. Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable or cemetery purposes, as defined by law, and owned by any corporation or organization organized, and conduct,ed exclusively for one or more of such purposes and not operating for profit.
[emphasis added]
This constitutional provision demands an ongoing analysis of the corporation asserting entitlement to an exemption; the same genre of analysis undertaken by the court in Intercare. The entity entitled to a N.J.S.A 54:4-3.6 exemption will demonstrate its requisite character and exempt purpose not only by its formal organizational documents but also by the activities it performs after its existence has commenced. To examine merely the for *400 malities of organization without examining the actual conduct (activities) of the corporation thereafter, would result in the elevation of form over substance.[9] It cannot be concluded that such was the legislature’s intent on enactment of N.J.S.A 54:4-3.6.
“Organized exclusively,” as used to describe a corporation whose real property is exempt from local property taxation, is therefore, a two-pronged test. A corporation entitled to the exemption will be one which is: (1) formally incorporated under Title 15A (or its predecessor Title 15) and thereafter, (2) conducted exclusively for the accomplishment of one or more purposes qualifying for exemption under N.J.SA 54:4-3.6. An entity whose N.J.SA 54:4-3.6 exemption is based upon its moral improvement purpose will meet the first prong of the organization test by demonstrating formal compliance with the provisions of Title 15A (Title 15) (N.J.SA 15A:2-1 to -12) and an exclusive purpose which fits within the definition of the “moral and mental improvement” category of the statute. See Church Contribution Trust v. Mendham Bor., 9 N.J.Tax 299, 308-12 (Tax 1987), aff'd, 224 N.J.Super. 643, 541 A.2d 249 (App.Div.1988), for a collection of the various purposes which may fall within this category of the statute. While entitlement to the exemption does not'turn solely on compliance with Title 15A, the exemption may not be obtained in the absence of such compliance.
The purposes stated in a corporation’s certificate of incorporation are reflective of purposes (intent) at the time of incorporation, such purposes may, however, change over the course of time. It is the purposes pursued by a corporation as of the applicable assessment date,[10] which are relevant to the determination of the character of the entity under the second prong of the organization test. These may or may not align with the original purposes set out in a corporation’s certificate of incorporation and *401 must be deduced by examination of the corporation’s activities and the facts and circumstances surrounding the corporation’s operations at such time.
Taxpayer was incorporated under the provisions of Title 15 of the Revised Statutes by the filing of a certificate of incorporation with the Secretary of State of New Jersey on January 30, 1969. The stated purposes for which taxpayer was formed have not been challenged by the municipality as being insufficient to constitute a moral improvement purpose under N.J.S.A. 54:4-3.6. Nor has the municipality argued that taxpayer’s certificate of incorporation was deficient in meeting the formal requirements for organization under Title 15A (Title 15). Taxpayer passes the first prong of the organization test.
As of October 1, 1991, taxpayer’s conduct evidences that its original stated purpose had changed. On this date the subject property was not used exclusively by a corporation organized and conducted exclusively for the exempt purpose set out in taxpayer’s certificate of incorporation. An examination of taxpayer’s activities at the subject property clearly leads to the conclusion that taxpayer’s purposes on October 1,1991 were to accomplish (i) the maintenance of a portion of the massive 484-acre tract for use by many different groups for conferences, meetings, retreats and respites; (ii) the conduct of farming activities sufficient to qualify a portion of the subject property for municipal tax assessment under the Farmland Assessment Act, and (iii) the leasing of the bulk of the acreage for use as a state registered tree farm, also within the requirements for farmland assessment approval. These activities bespeak support and furtherance of purposes more private than public in character, producing benefits more private than public in character. The evidence simply does not support the conclusion that taxpayer is an entity whose exclusive purpose and focus continued to be as declared in its certificate of incorporation. Taxpayer’s raison d’etre at the assessment date was the care, maintenance and preservation of a large tract of real property which was acquired, not because it was necessary to the accomplishment of assisting in the rehabilitation of discharged mental patients, but through the largesse of a trustee. Taxpayer’s *402 activities conducted on the subject property flow from the needs of the property and not the needs of the discharged mental patients served by Fountain House—NY. Accordingly, taxpayer is not a corporation conducted exclusively for the accomplishment of a moral improvement purpose. The second prong of the organization test is failed.

(b) The “Exclusive” Use Test.

In order for taxpayer’s outbuildings to meet the use criterion of N.J.S.A. 54:4-3.6 for a moral and mental improvement purpose, it must demonstrate that the outbuildings are reasonably necessary for the accomplishment, and an integral part, of the taxpayer’s activities in pursuit of a function forming the basis of an exemption under N.J.S.A. 54:4-3.6. Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), aff'd, Monmouth Medical Center v. Long Branch, 73 N.J. 179, 373 A.2d 651 (1977). Assuming for purposes of argument that taxpayer passed the organization test, so that this court would then be required to apply the use test, taxpayer would still fail to qualify for an exemption under N.J.S.A 54:4-3.6.
Taxpayer argues that the undertaking of farming and maintenance activities on the subject property and within the outbuildings is essential to the accomplishment of its purpose of assisting in the rehabilitation of discharged mental patients. It asserts that this purpose falls under the moral and mental improvement provisions of N.J.S.A. 54:4-3.6. The municipality contends that the outbuildings are predominately used in the taxpayer’s active farm use; that taxpayer has failed to establish that its farming activity (and therefore the use of the outbuildings) was exclusively in furtherance of its stated moral improvement purpose of rehabilitating discharged mental patients; and therefore, fails to meet the exclusiveness of use test of N.J.S.A. 54:4-3.6.
The court agrees with the municipality. It is clear that the outbuildings were used in the conduct of the taxpayer’s active farming operations and its maintenance tasks with respect to the subject property. Such evidence falls far short, however, of establishing that the utilization of the outbuildings for the perfor *403 manee of farm and maintenance tasks by a small and in fact undetermined percentage of the members of Fountain House—NY (and others) was an integral part of the function of Fountain House—NY, or that the outbuildings were actually and exclusively used to carry out any program of rehabilitation and vocational training. See Princeton University Press v. Princeton Bor., supra; Long Branch v. Monmouth Medical Center, supra. The performance of farming and maintenance tasks by the members was for the benefit of taxpayer. At most these tasks afforded the members a recreational activity, rather than constituting an undertaking in furtherance of their rehabilitation and vocational training. The benefit to the members was indirect and clearly insufficient to support the claimed exemption. Church Contribution Trust v. Mendham Bor., supra, 9 N.J.Tax at 311; Harvey Cedars v. Sisters of Charity of St. Elizabeth, 163 N.J.Super. 564, 395 A.2d 518 (App.Div.1978).[11]

(c) The Not For Proftt Test.

The municipality did not advance an argument that taxpayer failed to meet this criterion of the statute. While it would appear *404 that only in those rare circumstances where a taxpayer’s exempt purpose under N.J.S.A 54:4-3.6 (requiring a not-for-profit intent) and active farming purpose under N.J.S.A 54:4-23.3 (requiring a for-profit intent)[12] are inextricably linked may these two diametrically opposed purposes coexist to permit both an exemption and farmland assessment, this court leaves for another day a thorough analysis of this issue.

The Charitable Support Purpose.

To prevail under the charitable support purpose, taxpayer must meet the following criteria: (a) taxpayer must be a corporation organized and conducted under, or subject to, the provisions of Titles 15 or 15A (the level one organization test) and must own the outbuildings; (b) the outbuildings must be actually and exclusively used for charitable or religious purposes (the exclusive use test); (c) in the work of one or more other corporations organized and conducted exclusively for charitable or religious purposes (the level two organization test), and (d) taxpayer’s operation and uses of the outbuildings, together with the operation and uses of same by any other corporation must not be conducted for profit (the level one and level two not-for-profit tests).[13]
Taxpayer offered no evidence at trial as to the identity, organization or activities of the diverse organizations which use the subject property together with Fountain House—NY. Nor did Fountain House—NY. Accordingly, taxpayer having failed to prove its claim for exemption under what this court has labeled the charitable support purpose provisions of N.J.S.A 54:4-3.6, it is not necessary that the court make any specific determinations as to the level one and level two organization and not-for-profit tests, nor as to the exclusive use tests set out above. These tests do not vary in substance from the tests articulated under the moral *405 improvement purpose.[14]
In taxpayer’s post-trial brief an equal protection argument was advanced de novo. Taxpayer there asserts that a denial of exemption under N.J.S.A 54:4-3.6 based upon Fountain House— NY’s existing as a corporation under the laws of New York State would deny that entity equal protection under the United States Constitution. The -within decision relates solely to taxpayer, a New Jersey corporation which owns and operates the subject property. Accordingly, this argument is without merit.
For all of the foregoing reasons, it is held that the outbuildings forming a part of the subject property are not entitled to an exemption under N.J.S.A 54:4-3.6.
The Tax Court Administrator is directed to enter judgment affirming the Sussex County Board of Taxation’s judgment for tax year 1992.

 Pursuant to the provisions of NJ.S.A. 15A:l-3a(2), taxpayer is presently existing under the provisions of the New Jersey Nonprofit Corporation Act {NJ.S.A. 15A: 1-1 et seq.).

 This acreage is as set forth in taxpayer’s initial statements dated August 1, 1991 and October 30, 1979, copies of which were attached to a further statement dated October 22, 1991 and filed with the assessor of Montague Township pursuant to the provisions of NJ.S.A. 54:4-4.4. These documents are collectively referred to as the further statement. At trial the testimony of taxpayer’s witness suggested that the subject property consisted of approximately 477 acres. This minor inconsistency is immaterial to the resolution of the within conflict.

 Taxpayer’s address for purposes of its municipal tax billing, Internal Revenue Service registrations and further statement, is care of Fountain House, Inc., at a New York City address.

 Assuming that two different groups of members and staff visited each week, to the exclusion of all other groups who utilize the subject property, it would appear that out of the 800 monthly member population of Fountain House—NY, at best, a total of 80 members would visit the subject property monthly.

 Taxpayer's further statement explains, at rider to question 12(a), that:
The property is used by groups of staff workers and clients [members] as part of the overall psychiatric rehabilitation programs of Fountain House (i.e., Fountain House—NY) or by groups of professionals from around the nation as a conference center on psychiatric rehabilitation. The groups are expected to participate in some of the basic activities of the properties, such as helping with farm chores, gardening, cleaning and general upkeep. These groups are limited to approximately 15 people in size by the amount of the accommodations in the chalet. Typically, two groups use the center each week.

 Taxpayer’s further statement at rider to question 11(b) and (d). The 460-acre parcel was described in the trial testimony of taxpayer's program director as being devoted to use as a "State registered tree farm," with all lumbering work being performed by outside professionals. The testimony of the municipal *395 assessor indicated a total of 456.5 acres was devoted to this use. This minor discrepancy is of no consequence to the within decision.

 Nonprofit corporations are governed by the provisions of NJ.S.A. 15A:1~1 et seq. (Title 15A). Title 15A was enacted effective October 1, 1983, as “An Act concerning nonprofit corporations, revising the statutory law pertaining thereto and enacting a new title to be known as Title 15A, Corporations, Nonprofit of the New Jersey Statutes____" Prior to the enactment of Title 15A, Title 15 of the Revised Statutes had provided for both corporations and unincorporated associations. Title 15A is inapplicable to unincorporated associations, although the rights and existence of such associations were preserved under Title 15A. The report of the Nonprofit Law Revisions Committee explains the Legislature’s intention to discourage the formation of such associations primarily as a result of the unanticipated exposure to liability of the members. Accordingly, the reference in N.J.S.A. 54:4-3.6 to “associations and corporations” may, in general, be read “corporations.”

 Cf. Planned Parenthood v. Hackensack, 12 N.J.Tax 598, 610 n. 6 (Tax 1992), where the court, in dicta, opines that "—the term 'organized' in the statute refers to the entity’s organizational documents, its corporate charter.”

 It is noted that the ultra vires acts of a nonprofit corporation are valid and legally binding unless and until a proceeding shall be commenced in accordance with the provisions of NJ.S.A. 15A:3-2.

 Atlantic Cty. New School, Inc. v. Pleasantville, 2 N.J.Tax 192 (Tax 1981).

 The moral and mental improvement purpose section of N.J.S.A. 54:4-3.6 was amended by ¿.1985, c. 395 for the following purpose:
—to allow associations for the moral and mental improvement ... to receive a partial real property tax exemption for buildings partially used for their own charitable purposes and partially used for non-exempt purposes or leased to profit-making tenants. Under current law each separately assessed structure must be exclusively used for exempt purposes ior the exemption to apply. This Bill would allow an exemption to apply to that portion of any building actually used in connection with tax-exempt functions. Similar treatment has been provided for hospitals ... and educational institutions____
[Governor's Reconsideration and Recommendation Statement, Assembly Bill 2246 (1985)]
The within taxpayer has not asserted that only a portion of the outbuildings qualify for the exemption. Under either option, however, the inquiry would appear to remain the same as under prior law—i.e., exclusive use. It appears that the prior language "actually and exclusively” used was intended to apply to the portion of a building where another portion thereof is used in a nonexempt activity or leased. Accordingly, the title of the test has been retained in this opinion.

 N.J.S.A. 54:4-23.3; Mt. Hope Mining Co. v. Rockaway Tp., 8 N.J.Tax 570 (Tax 1986).

 N.J.S.A. 54:4-3.6.

 The distinguishing feature under this purpose is the requirement that the statutory underpinning is a "charitable or religious” purpose, rather than a “moral and mental improvement purpose.”